PEOPLE v CONTE

PEOPLE v MEAKER

PEOPLE v BRADLEY

PEOPLE v NORMAN

PEOPLE v COOPER

Docket Nos. 66858, 67351, 68192, 68193, 69664, 71241. Argued March
    7, 1984 (Calendar Nos. 5-9).—Decided December 28, 1984. Re-
    leased March 19, 1985. Rehearing denied in *Norman,* 422 Mich
    1202.

Augustino C. Conte was charged with conspiracy to murder, first-
    degree murder, and two counts of possession of a firearm
    during the commission of a felony. His motion to suppress a
    confession offered to the prosecution in return for a promise to
    not prosecute his girlfriend for involvement in other crimes
    was granted by the Oakland Circuit Court, James S. Thorburn,
    J. The Court of Appeals, Danhof, C.J., and Allen and M. F.
    Cavanagh, JJ., reversed by order (Docket No. 78-3329). Conte
    subsequently was convicted by a jury in the Oakland Circuit
    Court, James S. Thorburn, J., of first-degree murder. The Court
    of Appeals, M. F. Cavanagh, P.J., and T. M. Burns and Camp-
    bell, JJ., affirmed (Docket No. 45095). The defendant appeals.

Timothy L. Meaker was charged in the Wayne Circuit Court with
    first-degree murder and possession of a firearm during the
    commission of a felony. Prior to jury selection, the defendant
    moved to suppress certain inculpatory statements made to the
    police, alleging that they were involuntary. The court, Harry J.
    Dingeman, J., found the statements were voluntary and admis-
    sible, and the defendant was subsequently convicted by a jury
    of first-degree murder and felony-firearm. The Court of Ap-
    peals, Danhof, C.J., and Cynar and MacKenzie, JJ., reversed in
    an unpublished opinion per curiam, holding that the state-

---

REFERENCES FOR POINTS IN HEADNOTES

[1-7] 29 Am Jur 2d, Evidence § 563.

Admissibility of pretrial confession in criminal case—Supreme
    Court cases. 1 L Ed 2d 1735, 4 L Ed 2d 1833, 12 L Ed 2d 1340, 16
    L Ed 2d 1294.

Admissibility of defense communications made in connection with
    plea bargaining. 59 ALR3d 441.

[2-7] 29 Am Jur 2d, Evidence §§ 542-545.

ments were involuntary and should have been suppressed (Docket No. 44427). The people appeal.

Jerry Bradley was convicted by a jury in Cass Circuit Court, James E. Hoff, J., of first-degree murder and breaking and entering. The defendant's motion to suppress his statements made prior to arraignment and without the advice or assistance of counsel as the direct consequence of an offer by the prosecution not to charge defendant with first-degree murder had been denied. The Court of Appeals, MacKenzie, P.J., and Bashara, J. (T. M. Burns, J., concurring in part and dissenting in part), affirmed (Docket Nos. 47118, 47119). The defendant appeals.

Alonzo L. Norman was convicted by a jury in the Recorder's Court of Detroit, Clarence Laster, Jr., J., of first-degree murder, assault with intent to murder, and armed robbery. While awaiting sentencing, the defendant offered to provide information regarding certain other murders and subsequently entered into an agreement with the prosecutor whereby his conviction would be dismissed and he would be permitted to plead guilty to one count of second-degree murder in the original case and to one count of second-degree murder in the other murder cases in exchange for testimony against his alleged accomplices. At the preliminary examination of an accomplice, the defendant admitted killing four persons. At the defendant's preliminary examination, he declined to plead guilty and requested trial. The Wayne Circuit Court, Thomas J. Foley, J., denied the defendant's motion to suppress his testimony at the preliminary examination of his accomplice and entered judgment on a jury verdict of guilty of four counts of first-degree murder and one count of armed robbery. The Court of Appeals, R. M. Maher, P.J., and Beasley, J. (Marutiak, J., dissenting), reversed in an unpublished opinion per curiam (Docket No. 53495). The people appeal.

Timothy L. Cooper was convicted by a jury in the Mason Circuit Court, Richard I. Cooper, J., of wilfully and maliciously burning a building. The trial court declined to suppress defendant's confession, finding it to be voluntary. The Court of Appeals, MacKenzie, P.J., and D. E. Holbrook, Jr., J. (DeWitt, J., dissenting), reversed in an unpublished opinion per curiam (Docket No. 56371). The people appeal.

In opinions by Chief Justice Williams, joined by Justices Kavanagh and Levin, by Justice Boyle, joined by Justice Ryan, by Justice Brickley, and by Justice Cavanagh, the cases were resolved as follows:

In *Conte,* the decision of the Court of Appeals was affirmed by equal division;

In *Meaker,* the decision of the Court of Appeals was reversed;

In *Bradley,* the decision of the Court of Appeals was reversed;

In *Norman,* the decision of the Court of Appeals was affirmed;

In *Cooper,* the decision of the Court of Appeals was reversed.

Chief Justice Williams, joined by Justices Kavanagh and Levin, stated that under the Michigan Constitution a confession or inculpatory statement induced by a law enforcement official's promise of leniency is involuntary and inadmissible. In determining whether an inculpatory statement or confession was induced by a promise of leniency, a court must inquire 1) whether the defendant was likely to have reasonably understood statements made by the official to be a promise of leniency, and 2) whether the defendant relied upon the promise in making the decision to offer the inculpatory statement and was in fact prompted by the promise to give the statement. If the answer to either of the inquiries is in the negative, the statements are admissible. If the answers to both inquiries are in the affirmative, the statements are involuntary and inadmissible.

1. An involuntary confession is inadmissible on the ground that admission would violate the defendant's due process right to a fair trial and his right against compelled self-incrimination. Promises of leniency that induce a confession render the confession involuntary and inadmissible. In applying the rule, it must be determined whether a promise of leniency was made and whether the promise caused the confession.

2. The focus in determining whether communications from law enforcement officials to the defendant were sufficient to constitute a promise of leniency must be upon the defendant's state of mind. The first inquiry is whether the defendant was likely to have reasonably understood the statements in question to be promises of leniency, and the answer will depend upon the facts and circumstances in which the language was used. Mere adjurations or exhortations to tell the truth, without more, are insufficient to vitiate the voluntariness of a confession; however, admonitions to tell the truth, coupled with other factors which could lead the defendant to believe that it is in his best interest to cooperate, may amount to a promise of leniency. The promise need not be express; subtle intimations can convey a promise. If it is determined that no promise was made, the matter need be pursued no further. If it is determined that a promise in fact was made, it must further be determined whether the promise induced the defendant's confession.

3. As in determining whether a promise was made, the focus remains on the defendant's state of mind in determining if the

promise caused him to confess. The promise must have more than an attenuated causal connection with the confession, but need not be the only or even the principal motivating factor. Rather, the promise must have been relied upon by the defendant in making the decision and must have prompted him at least in part to confess. In applying the test, distinctions need not be drawn between promises on the basis of who initiates the bargaining. The fact that the defendant initiates bargaining does not mean that he is not influenced by promises by law enforcement officials; nor does it make a confession more reliable. Similarly, there is no apparent reasonable basis to distinguish between promises affecting charges against the defendant and promises which would benefit a third person. A defendant's affection for his loved ones should not be used as a tool to extract a confession.

4. In these cases, it is necessary to examine the records and make independent determinations of the voluntariness of the statements at issue. In *Conte,* there is little doubt that a promise was made and that the defendant understood it to be a promise. Additionally, it appears that the promise caused the defendant to confess. Review of the record does not result in a definite and firm conviction that the trial court erred in suppressing the confession. The decision of the Court of Appeals should be reversed and the case should be remanded for a new trial. In *Meaker,* it is also clear that a promise was made and that the defendant understood it to be a promise. However, it does not appear that the promise caused the defendant to confess. Thus, the trial court did not err in failing to suppress the defendant's statements, and the judgment of the Court of Appeals should be reversed and the defendant's convictions reinstated. In *Bradley,* the existence of a promise and the defendant's understanding of it to be such as well as the causal nexus to the defendant's statement is clear. Thus, the trial court erred in failing to suppress the statements. The judgment of the Court of Appeals should be reversed and the case should be remanded for a new trial. In *Norman,* the existence of the promise, understanding, and causal nexus is clear. The trial court likewise in this case erred in refusing to suppress the defendant's statement. The judgment of the Court of Appeals should be affirmed. In *Cooper,* although the existence of a promise is not so clear, nonetheless, it appears that a promise was made and was understood to be a promise by the defendant. It also appears to have caused the defendant's confession, and the judgment of the Court of Appeals should be affirmed.

Justice Boyle, joined by Justice Ryan, stated that a defen-

dant's inculpatory statement is not inadmissible per se if induced by a promise of leniency. Admissibility is to be determined, given the totality of the circumstances, by whether the prosecution has demonstrated that the statement is voluntary.

1. Federal law does not require that a confession prompted by any concession, however slight, is inadmissible. In determining whether a defendant's confession is involuntary, the totality of all the surrounding circumstances should be considered. The totality of circumstances rule is consistent with the reason underlying exclusion of involuntary confessions: the nature of a threat or promise may lead an accused to make a statement regardless of its truth or falsity. The test strikes the appropriate balance between the admission of highly probative and relevant evidence and inadmissibility of a statement deemed unreliable because of the coercive effect of the inducement. It requires consideration of a multiplicity of factors, including, but not limited to, the nature of the inducement, the length and conditions of detention, the physical and mental state of the defendant, the conduct of the police, and the adequacy and frequency of advice of rights. If, after considering all relevant factors, a court concludes that the inducements offered did not overcome the defendant's ability to make a voluntary decision to make a statement, the statement will be admissible. In all cases, the burden is on the prosecution to demonstrate voluntariness by a preponderance of the evidence.

2. In each of these cases, the statement at issue was voluntary under the totality of circumstances test. In addition, MRE 410 did not apply in *Conte,* did not bar the statement in *Bradley,* and was not in effect at the time of the event in question in *Norman.* Thus, the judgment of the Court of Appeals should be affirmed in *Conte* and *Bradley,* and reversed in *Meaker, Norman,* and *Cooper.* In *Meaker* and *Cooper,* the judgment of the trial court should be reinstated. *Norman* should be remanded to the Court of Appeals for further consideration.

Justice Brickley agreed with the reasoning of and the legal standard enunciated by Justice Boyle except in *Bradley,* where he agreed with Justice Cavanagh that the case should be remanded for a new trial.

Justice Cavanagh agreed that circumstances and factors in addition to a promise of leniency should be considered in evaluating the voluntariness of statements alleged to have been induced by promises of leniency but would consider as additional circumstances affecting voluntariness, where benefits or threats to a third party are involved, the nature of the relationship between the accused and the third party and the extent of

the benefit or threat. In addition, he agreed with Chief Justice Williams that the fact that a defendant initiated bargaining is not particularly probative of voluntariness. In *Norman,* the decision of the Court of Appeals to suppress the defendant's statements should be affirmed. The purpose of MRE 410 to promote the disposition of criminal cases by compromise and to permit unrestrained candor to produce effective plea discussions was just as valid before the rule was adopted. In *Bradley,* because the defendant's confession was erroneously admitted, the case should be remanded for a new trial.

104 Mich App 73; 304 NW2d 485 (1981) affirmed.

106 Mich App 373; 308 NW2d 216 (1981) reversed.

OPINION BY WILLIAMS, C.J.

1. CRIMINAL LAW — CONFESSIONS — INCULPATORY STATEMENTS — PROMISES OF LENIENCY.

    *A confession or inculpatory statement induced by a law enforcement official's promise of leniency is involuntary and inadmissible (Const 1963, art 1, § 17).*

2. CRIMINAL LAW — CONFESSIONS — INCULPATORY STATEMENTS — PROMISES OF LENIENCY.

    *In determining whether an inculpatory statement or confession was induced by a promise of leniency, a court must inquire 1) whether the defendant was likely to have reasonably understood statements made by the official to be a promise of leniency, and 2) whether the defendant relied upon the promise in making the decision to offer the inculpatory statement and was in fact prompted by the promise to give the statement; if the answer to either of the inquiries is in the negative, the statements are admissible; if the answers to both inquiries are in the affirmative, the statements are involuntary and inadmissible (Const 1963, art 1, § 17).*

3. CRIMINAL LAW — CONFESSIONS — INCULPATORY STATEMENTS — PROMISES OF LENIENCY.

    *Mere adjurations or exhortations to tell the truth, without more, are insufficient to vitiate the voluntariness of a confession; however, admonitions to tell the truth, coupled with other factors which could lead the defendant to believe that it is in his best interest to cooperate, may amount to a promise of leniency (Const 1963, art 1, § 17).*

4. CRIMINAL LAW — CONFESSIONS — INCULPATORY STATEMENTS — PROMISES OF LENIENCY.

    *A promise of leniency made to a defendant by law enforcement*

*officials must have more than an attenuated causal connection with a confession by the defendant to render the confession involuntary and inadmissible, but it need not be the only or even the principal motivating factor in the defendant's decision to confess; rather, the promise must have been relied upon by the defendant in making the decision and must have prompted him at least in part to confess (Const 1963, art 1, § 17).*

5. CRIMINAL LAW — CONFESSIONS — INCULPATORY STATEMENTS — PROMISES OF LENIENCY.

*Distinctions should not be drawn in determining whether promises of leniency by law enforcement officials caused a confession on the basis of who initiated the bargaining which led to the promises; the fact that a defendant initiates bargaining with law enforcement officials that results in a confession does not eliminate influences by promises of leniency made by the officials or make the confession more reliable; nor should distinctions be drawn between promises of leniency affecting a defendant directly and promises affecting a defendant's loved ones (Const 1963, art 1, § 17).*

OPINION BY BOYLE, J.

6. CRIMINAL LAW — CONFESSIONS — INCULPATORY STATEMENTS — PROMISES OF LENIENCY.

*A defendant's inculpatory statement is not inadmissible per se if induced by a promise of leniency; admissibility is to be determined, given the totality of the circumstances, by whether the prosecution has demonstrated that the statement is voluntary.*

7. CRIMINAL LAW — CONFESSIONS — INCULPATORY STATEMENTS — PROMISES OF LENIENCY.

*In determining whether a confession made following promises of leniency is voluntary, the totality of all the surrounding circumstances should be considered including, but not limited to, the nature of the inducement, the length and conditions of detention, the physical and mental state of the defendant, the conduct of the police, and the adequacy and frequency of advice of rights; if, after considering all relevant factors, a court concludes that the inducements offered did not overcome the defendant's ability to make a voluntary decision to make a statement, the statement will be admissible.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Thomas S. Richards,* Assistant Prosecuting Attorney, for the people in *Conte.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Robert J. Sheiko,* Assistant Prosecuting Attorney, for the people in *Meaker.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Susan Lee Dobrich,* Prosecuting Attorney, for the people in *Bradley.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Larry L. Roberts,* Assistant Prosecuting Attorney, for the people in *Norman.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Cris Vanoosterum,* Prosecuting Attorney, and *Leonard J. Malinowski,* Assistant Attorney General, for the people in *Cooper.*

*Gerald Hale Ladue* for defendant Conte.

*Lawrence R. Greene* for defendant Meaker.

State Appellate Defender (by *Richard B. Ginsberg)* for defendant Bradley.

*McLain & Winters* (by *Wm. Douglas Winters* and *Christina B. Buoye)* for defendant Norman.

*Donald G. Jennings, P.C.* (by *Mark A. Otto),* for defendant Cooper.

WILLIAMS, C.J.

## I. INTRODUCTION

We granted leave to appeal in these five cases limited to the issue whether a defendant's inculpatory statement is inadmissible per se if induced by a law enforcement official's promise of leniency.

417 Mich 1036, 1037, 1038, 1040 (1983). In *People v Jones*, 416 Mich 354; 331 NW2d 406 (1982), *cert den* 460 US 1084; 103 S Ct 1775; 76 L Ed 2d 347 (1983), this Court was confronted with substantially the same issue. This Court, however, divided equally over the proper resolution of that issue. We now seek to resolve this split and the existing controversy between the per se test and totality of circumstances test.

We would adopt parts of both tests in favor of a test that we find to be more consonant with the law and logic. We would hold that under Const 1963, art 1, § 17, a statement induced by a law enforcement official's promise of leniency is involuntary and inadmissible, if there was a promise of leniency and that promise caused the defendant to confess. In determining whether a promise of leniency exists, the relevant inquiry is whether the defendant reasonably understood the official's statements to be a promise of leniency. In determining whether that promise caused the defendant to confess, we will ask whether the promise was one relied upon by the defendant in making his decision to offer inculpatory statements, and whether it was one that prompted him in fact to give those statements. If the answer to all of the foregoing inquiries is affirmative, the defendant's statements are involuntary and inadmissible. If the answer to any of the questions is negative, the defendant's statements are admissible.

## II. FACTS

*People v Conte*

Augustino Conte, originally charged with conspiracy to murder, MCL 750.157a; MSA 28.354(1), first-degree murder, MCL 750.316; MSA 28.548, and two counts of possession of a firearm during the commission of a felony, MCL 750.227b; MSA

28.424(2), went to trial only on the first-degree murder charge. This charge arose from the killing of a woman who was a major prosecution witness in another case against David Ovegian, one of defendant's accomplices in this case. A jury found the defendant guilty as charged, and Mr. Conte was sentenced to life imprisonment. The Court of Appeals affirmed, and we granted leave to appeal.

On September 18, 1977, the defendant and Gary Wolfe were arrested in connection with the robbery of the Arts and Gems jewelry store and the murder of its owner and assistant manager. Defendant's live-in girlfriend, Kathleen Stevenson, was arrested on the following day in connection with the same crime. The defendant later saw Ms. Stevenson in the booking area of the police station. She was emotionally upset, and defendant learned that she had been arrested for her alleged involvement in the Arts and Gems jewelry store murder and robbery. Defendant again encountered Ms. Stevenson on his way to an interrogation room. She was seated next to a detective's desk crying. Ms. Stevenson was then placed in an adjacent interrogation room where defendant claimed he could hear her.

While the evidence is contradictory, it seems that at some point the defendant offered to cooperate in the solving of four other cases if the authorities would release Ms. Stevenson and not charge her with any crime. The ultimate agreement reached was that defendant would solve four other crimes and the prosecutor would release Kathleen Stevenson and not charge her in connection with any of those four cases or the Arts and Gems crime, provided that she was not present at the scene of any of those crimes and did not pull the trigger in any homicide. This agreement was conditioned on the defendant's and Ms. Stevenson's

taking of polygraph tests to confirm the absence of Ms. Stevenson's involvement as above noted. Defendant confessed in accordance with the agreement to the crime for which he is charged in this case.

Following a *Walker* hearing, the district court denied defendant's motion to suppress the confession. The motion was renewed in the circuit court and granted. On interlocutory appeal, the Court of Appeals reversed and remanded. The case went to trial and proceeded as noted above.

## *People v Meaker*

Timothy L. Meaker was charged with one count of first-degree murder, MCL 750.316; MSA 28.548, and one count of possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). A jury found the defendant guilty as charged and he was sentenced to two years imprisonment on the felony-firearm conviction and life imprisonment on the first-degree murder conviction. The Court of Appeals reversed and denied rehearing. We held the prosecutor's application for leave to appeal in abeyance pending decision in *People v Jones, supra,* and subsequently granted leave to appeal.

The defendant's conviction arose out of the May 12, 1978, shooting death of Dennis Rudy, whose body was discovered on a gravel road in Brownstown Township, Wayne County. The victim had been shot seven times. The police learned that the defendant had been together with the victim on the night of the shooting and, hence, focused their investigation on him. On May 13, 1978, the defendant voluntarily appeared at a state police post and gave a statement. He admitted being with the victim on the night of his death, but said that he left the deceased alive in the company of two

unnamed males. On May 25, 1978, while still not in custody, defendant again voluntarily came to a state police post and gave another statement which was slightly different from the first statement. Later, defendant admitted that he was present when the deceased was shot, but stated that someone else shot him. Defendant indicated, however, that he set Mr. Rudy up for $2,000.

Defendant agreed to take a polygraph examination on June 8, 1978. Prior to the taking of that test, the examiner took a statement from the defendant to prepare for the test. Although it differed in some particulars, the defendant related a story to the examiner similar to the second one given on May 25.

Defendant was ultimately charged, and a preliminary examination was scheduled for June 19, 1978. On that date, the police, the prosecuting attorney, and the defendant through his attorney entered into an agreement whereby defendant would be given a reduced bond, but would be required to take an additional polygraph test and stay away from the victim's family.

The defendant met with an officer on June 26, 1978, for the purpose of conducting a "warm up" interview. At this time, the defendant gave yet another version of the events that transpired on the eve of May 12, 1978. The defendant confessed that he had shot the deceased following an argument and scuffle. Defendant indicated that he acted in self-defense. Finally, on June 28, 1978, the defendant appeared for the polygraph examination. A preliminary interview was conducted, during which defendant gave a story similar to that given on June 26, except that defendant stated that the deceased pulled a shotgun on him. The defendant subsequently refused to take the polygraph.

The defendant's pretrial motion to suppress the statements was denied by the trial judge after a *Walker* hearing. Following trial, defendant appealed the propriety of the trial court's ruling only as to the June 28, 1978 statement. The Court of Appeals ruled that the June 28 statement was involuntary and stated that on retrial the June 26 statement should likewise be excluded because it suffered from the same deficiencies as the June 28 statement. It is the propriety of this ruling that is before this Court.

*People v Bradley*

Jerry Bradley was jury convicted of first-degree murder, MCL 750.316; MSA 28.548, and breaking and entering an occupied dwelling with intent to commit a larceny, MCL 750.110; MSA 28.305. At the sentencing, the trial judge stated, "I'm persuaded by research that the underlying felony of the breaking and entering merges into the first-degree murder conviction when there's a finding of guilty of first-degree murder." Therefore, the trial judge only sentenced defendant on the murder conviction. Defendant received a sentence of life imprisonment for that conviction. The Court of Appeals affirmed, and we granted leave to appeal.

On November 25, 1978, the body of Kenneth Smith was found lying in the driveway of a Cass County, Michigan, home. An autopsy indicated that the cause of death was multiple blows, particularly one severe crushing blow to the head. The home, in the driveway of which the deceased's body had been found, was robbed. Certain automobile parts belonging to Daniel Alexander were discovered at the scene, and an eyewitness told police that the defendant may also have been involved.

The defendant was requested to voluntarily

come to the police station on November 29, 1978. He complied with the request. Following a discussion that evening, the defendant agreed to return the next morning for the purpose of taking a polygraph examination. After taking the examination, the defendant was questioned for a couple of hours before other officers arrived with a warrant for his arrest.

The defendant was subsequently taken to an "I.D." room in the Cass County Sheriff's Department. At that time, the defendant asked the officers present what would happen to a man who was with someone who killed another, but did not participate in the killing. The defendant also intimated that he might be interested in making a deal. The officers told the defendant that the prosecutor could better answer his question and that the prosecutor was the only one who could make deals. Defendant then expressed a desire to speak with the prosecutor. When the prosecutor arrived, the defendant asked the prosecutor the same question he had previously asked the police officers. The defendant was provided with an answer, and no further conversation ensued.

An officer again spoke with the defendant on the night of November 30 and the early morning of December 1. No incriminating statements were made during either of those conversations.

At about 10 a.m. on December 1, 1978, Detective David Gizzi asked to speak with the defendant. Detective Gizzi told the defendant that if he did not commit the actual killing, gave a statement, and testified against Mr. Alexander, defendant would only be charged with breaking and entering instead of first-degree murder. Defendant expressed an interest in being released on bond, and Detective Gizzi told defendant that while no bond could be set for one against whom a first-degree

murder charge was pending, he was sure that a reasonable bond would be set on a breaking and entering charge. The defendant then gave an oral confession to Detective Gizzi and later repeated the confession for the purpose of permitting it to be recorded.

The defendant later refused to take the stand against Mr. Alexander, contending that he had not agreed to testify. Detective Gizzi acknowledged that defendant was reluctant to testify, but stated that he ultimately agreed to do so.

Following a *Walker* hearing, the trial judge ruled that a plea bargain was not involved and that defendant's statements were voluntary and admissible. As previously noted, the Court of Appeals affirmed.

## *People v Norman*

Alonzo Lee Norman, Jr., was convicted by a jury of four counts of first-degree murder, MCL 750.316; MSA 28.548, and one count of armed robbery, MCL 750.529; MSA 28.797, in connection with his participation in the killing of four persons during the robbery of a River Rouge jewelry store. On the murder convictions, defendant was sentenced to four life terms, and, on the armed robbery conviction, he received a prison sentence of from 100 to 150 years. The Court of Appeals reversed. We granted leave to appeal.

On December 3, 1975, the defendant was convicted by a jury in a separate case of first-degree murder, assault with intent to murder, and armed robbery. These convictions arose out of a different incident involving the killing of Bobby Jacks, Jr. While in the Wayne County Jail awaiting sentencing, the defendant contacted the prosecutor's office and others by letter, telling them that he had certain information that might be of interest to

them. Several meetings between the defendant, the Detroit police, the River Rouge police, and the prosecutor subsequently ensued. As a result of those meetings an agreement was entered into wherein the defendant agreed to identify and testify against his accomplice in the River Rouge jewelry store murder in exchange for the prosecutor's agreement to permit defendant to plead guilty to one count of second-degree murder in the River Rouge case and, upon completion of the above testimony, to permit dismissal of the Jacks murder conviction and allow defendant to plead guilty to one count of second-degree murder in that case. The prosecutor also indicated that he would not charge defendant as an habitual offender.

In accordance with the agreement, the defendant executed written statements to the police and prosecutor which described in considerable detail the River Rouge jewelry store killings. In these statements, defendant implicated himself, an accomplice, Reginald Johnson, and others.

In this case, defendant waived his preliminary examination and was bound over for trial. He testified against his codefendant, Reginald Johnson, at the latter's preliminary examination. Defendant identified Johnson as his accomplice in the River Rouge killings, and described the events preceding the robbery, the robbery itself, and the events that transpired thereafter. Defendant admitted killing the four persons involved.

On March 22, 1976, the defendant, rather than plead guilty, expressed a desire to go to trial. Trial began on April 20, 1976. Defendant's motion to suppress his testimony given at Johnson's preliminary examination was denied. Following trial, defendant appealed the trial judge's ruling, and the Court of Appeals reversed.

*People v Cooper*

Timothy Landry Cooper was charged and was convicted by a jury of wilfully and maliciously burning a building. MCL 750.73; MSA 28.268. The defendant's conviction resulted from his involvement in the burning of a residence he owned. The defendant was sentenced to pay a fine and costs of $2,100, and to serve six months in jail and five years on probation. The Court of Appeals reversed, and we granted leave to appeal.

It seems that defendant's insurance adjuster suspected that the fire had been deliberately set and thus requested an investigation. Pursuant to that request, State Trooper Richard Rowley, Sergeant Rowhetter of the Fire Marshal's Division of the State Police, an insurance adjuster, and two local firemen agreed to meet at defendant's residence on November 2, 1979, to conduct an investigation. The defendant was also invited and decided to accompany the men. Following the investigation, Sergeant Rowhetter informed Officer Rowley that it was his opinion that the fire was not of natural origin.

To begin his investigation, Officer Rowley decided to start by questioning the defendant, whom Officer Rowley had known for four to five years through frequent contact at a local restaurant where defendant was formerly employed. After the investigation of the home, the defendant had agreed to meet with Officer Rowley at a service station owned and operated by the defendant. The two men talked inside the service station for a few minutes, but soon moved to Officer Rowley's car because of a disruption caused by customers.

It seems that at some point during their conversation, Officer Rowley became suspicious of the defendant. Finally, he told the defendant that if the defendant was in any way involved in the fire,

he would like to know about it. The defendant denied any involvement. Officer Rowley reminded the defendant that they had known each other for four to five years and asked the defendant if he had ever given defendant a bad deal. The officer told defendant that if he confessed it would be made known in the officer's report, and that nobody would "kick him in the teeth because he cooperated." At this point defendant confessed. After defendant spoke with his father, who was attending to the operation of the service station, defendant was taken to the police station where he executed a handwritten confession.

Following a *Walker* hearing, the trial judge declined to suppress the confession. The Court of Appeals reversed.

### III. CONSTITUTIONAL BASIS FOR ADMISSIBILITY OF CONFESSIONS

Under Michigan law, initially the admissibility of confessions was governed solely by common law, which adhered to the rule that involuntary confessions were inadmissible. See *People v Wolcott,* 51 Mich 612; 17 NW 78 (1883); *Flagg v People,* 40 Mich 706 (1879). But see *People v Thomas,* 9 Mich 314, 317 (1861) (opinion of CAMPBELL, J.). In fact, in *People v Owen,* 154 Mich 571; 118 NW 590 (1908), this Court specifically disavowed the notion that an extra-judicial confession could be rendered inadmissible on the ground that it was given in violation of the defendant's constitutional right against self-incrimination. But see *People v Owen, supra,* p 580 (MOORE, J., *dissenting); People v Thomas, supra,* p 317 (opinion of CAMPBELL, J.).

Subsequently, however, this Court recognized a constitutional basis for the rule. In *People v Cavanaugh,* 246 Mich 680; 225 NW 501 (1929), this

Court recognized that the admission of an involuntary confession at trial violated defendant's right to "due process." Although *Cavanaugh* did not specifically cite any constitutional provision for support, it was decided at a time when the federal due process guarantee against the admissibility of involuntary confessions had not been held applicable to the states. Hence, it seems that the *Cavanaugh* Court must have been relying upon the Michigan constitutional guarantee of due process. Const 1908, art 2, § 16. See Const 1963, art 1, § 17.

In *People v Hamilton,* 359 Mich 410; 102 NW2d 738 (1960), this Court clarified any ambiguity present in *Cavanaugh* by making it abundantly clear that the Due Process Clause in the 1908 Michigan Constitution prohibited the admission of an involuntary confession. Const 1908, art 2, § 16. That provision, in pertinent part, provided:

"No person shall . . . be deprived of life, liberty or property, without due process of law."

The 1963 Michigan Constitution contains exactly the same provision. Const 1963, art 1, § 17.

Ultimately, however, this Court, like its federal counterpart, also found that the right against self-incrimination provided a basis for holding involuntary confessions inadmissible. In *People v Louzon,* 338 Mich 146; 61 NW2d 52 (1953), decided before the federal self-incrimination guarantee against the admissibility of involuntary confessions was made applicable to the states, this Court indicated that the Self-Incrimination Clause in the Michigan Constitution prevented involuntary confessions from being used in state trials. *People v Louzon, supra,* pp 153-154. See Const 1908, art 2, § 16. The provision of the Michigan Constitution then applicable was Const 1908, art 2, § 16, which in relevant part read:

"No person shall be compelled in any criminal case to be a witness against himself . . . ."

Its successor in the 1963 Michigan Constitution is art 1, § 17, which contains exactly the same language as that present in Const 1908, art 2, § 16.

Under federal case law, as under the Michigan experience, the admissibility of confessions, once tested by common-law rules, see, *e.g., Wilson v United States,* 162 US 613, 621-623; 16 S Ct 895; 40 L Ed 1090 (1896); *Pierce v United States,* 160 US 355; 16 S Ct 321; 40 L Ed 454 (1896), is now governed by constitutional provisions. See, *e.g., Malloy v Hogan,* 378 US 1, 6-9; 84 S Ct 1489; 12 L Ed 2d 653 (1964); *Burdeau v McDowell,* 256 US 465, 474-475; 41 S Ct 574; 65 L Ed 1048 (1921); *Bram v United States,* 168 US 532, 542; 18 S Ct 183; 42 L Ed 568 (1897). In federal courts, both the due process right to a fundamentally fair trial and the self-incrimination right against compelled testimonial disclosure, as protected by the Fifth Amendment, prohibit the use at trial of involuntary confessions. *United States v Powe,* 192 US App DC 224, 229, fn 5; 591 F2d 833 (1978). That amendment, in pertinent part, reads:

"[N]or shall any person . . . be compelled in any Criminal Case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law . . . ."

In *Brown v Mississippi,* 297 US 278; 56 S Ct 461; 80 L Ed 682 (1936), the United States Supreme Court held that the Due Process Clause of the Fourteenth Amendment, which provides that no state shall "deprive any person of life, liberty, or property without due process of law . . .," prevented the use of involuntary confessions in state

trials. Subsequently, in *Malloy v Hogan,* 378 US 1; 84 S Ct 1489; 12 L Ed 2d 653 (1964), the United States Supreme Court declared that additional protection against the use of involuntary confessions in state trials was afforded by the incorporation into the Due Process Clause of the Fourteenth Amendment, of the Fifth Amendment's protection against self-incrimination. See *United States v Bernett,* 161 US App DC 363, 370, fn 37; 495 F2d 943 (1974) (opinion of Robinson, J.). Hence, under federal law, a defendant may invoke either his due process right or his right against self-incrimination in attacking an involuntary confession.

In light of the foregoing, it is clear that an involuntary confession is inadmissible under both the state and federal constitutions on the ground that such admission would violate a defendant's due process right to a fundamentally fair trial and his self-incrimination right against compelled testimonial disclosure. In making our decision today, however, we rely solely upon the Due Process and Self-Incrimination Clauses of the Michigan Constitution. Const 1963, art 1, § 17. Since these provisions provide an adequate basis for our decision, we find it unnecessary to reach the federal constitutional issue.

Although we do not reach the federal question, we will, to some extent, look to cases interpreting the relevant federal provisions. Inasmuch as the Michigan and federal provisions are almost identical, a review of foreign cases interpreting the federal constitution should prove instructive in our endeavor to glean the true meaning of Const 1963, art 1, § 17.

### IV. HISTORY OF ADMISSIBILITY OF CONFESSIONS INDUCED BY PROMISES OF LENIENCY

Most authorities acknowledge that promises of

leniency can render a confession involuntary and inadmissible. See, *e.g.,* 3 Wigmore, Evidence (Chadbourn rev), §§ 834-839; 3 Wharton, Evidence (13th ed), §§ 680-682; 29 Am Jur 2d, Evidence, § 558 *et seq.* In fact, in *People v Barker,* 60 Mich 277, 295; 27 NW 539 (1886), we stated that only "[c]onfessions voluntarily made, not induced by threats, *or by a promise or hope of favor,* are admissible in evidence in criminal cases" (emphasis added). See *People v Wolcott, supra; Flagg v People, supra.* The real question is under what circumstances will a promise of leniency render a confession involuntary. More particularly, the issue is whether, in determining the voluntariness of a confession, a promise of leniency is merely one of many factors to consider, see *People v Langford,* 76 Mich App 197; 256 NW2d 578 (1977), *lv den* 403 Mich 835 (1978), *cert den* 440 US 964 (1979) (totality of the circumstances approach); or, whether a promise of leniency which alone induces a confession is sufficient to render the confession involuntary, see *People v Pallister,* 14 Mich App 139; 165 NW2d 319 (1968) (per se approach). In deciding this issue, we must keep in mind the fact that Const 1963, art 1, § 17, should be construed liberally. *Moll v Danziger,* 238 Mich 39, 42; 213 NW 448 (1927), citing *Joslin v Noret,* 224 Mich 240; 194 NW 983 (1923).

In *People v Jones, supra,* this Court split over substantially the same issue presented herein. *Jones* involved a confession given in connection with an aborted plea bargain which the defendant had solicited. This Court unanimously held that the defendant's confession was inadmissible, but divided equally as to the basis therefor. Justice KAVANAGH, in an opinion concurred in by myself and Justice LEVIN, adopted what has been labeled

a "per se" approach. Justice Kavanagh, relying upon the Fifth Amendment's protection against compulsory self-incrimination, stated that the confession given by the defendant therein was involuntary and inadmissible per se because it had been obtained by a promise of leniency given in accordance with the plea agreement.

Justice Ryan authored the opposing opinion, which was concurred in by Justices Coleman and Fitzgerald. He criticized the adoption of a per se test, reasoning that neither logic nor case law supported such a position. He concluded that the proper test was "totality of the circumstances." Justice Ryan, however, did not base his conclusion that defendant's confession was inadmissible on the ground that it was involuntary under the totality of the circumstances. Rather, Justice Ryan held that defendant's confession was inadmissible under MRE 410, which excludes statements made in connection with guilty pleas and offers to plead guilty.

Currently, consideration of a proper test to determine the admissibility of confessions induced by a promise of leniency focuses on whether the strict per se approach or a totality of the circumstances approach should be adopted. While both of these tests find some support in law and policy, we find more compelling the test that we would adopt today.

The per se approach is usually derived from *Bram v United States,* 168 US 532; 18 S Ct 183; 42 L Ed 568 (1897), the pivotal United States Supreme Court opinion. *Bram* is the source of most of the controversy in this area.

In *Bram,* the defendant was charged with killing the captain of a ship while on the high seas. The crew arrested Bram, suspecting that he had committed the crime, and placed him in irons. Upon

reaching port, the defendant was turned over to the authorities of Halifax, Nova Scotia. While awaiting action by the United States consul, the defendant was brought from his place of confinement to the office of a detective. While alone with Bram, the detective caused him to be stripped. The detective then proceeded to question Bram. The detective told Bram that a shipmate had seen Bram commit the crime. Bram responded, " 'He could not have seen me [from] where he was.' " *Bram, supra,* p 539. These inculpatory statements were admitted at defendant's trial.

The United States Supreme Court reversed Bram's conviction on the ground that his statements were involuntary. In the course of its discussion, the Court set forth the following rule:

" 'But a confession, in order to be admissible, must be free and voluntary: that is, must not be extracted by any sort of threats or violence, *nor obtained by any direct or implied promises, however slight,* nor by the exertion of any improper influence. . . . A confession can never be received in evidence where the prisoner has been influenced by any threat or promise; for the law cannot measure the force of the influence used, or decide upon its effect upon the mind of the prisoner, and therefore excludes the declaration if any degree of influence has been exerted.' " *Bram, supra,* pp 542-543, 565, quoting 3 Russell, Crimes (6th ed), p 478 (emphasis added).

The foregoing language has been construed literally by some courts, resulting in what has been labeled a per se approach. See, *e.g., Gunsby v Wainwright,* 596 F2d 654 (CA 5, 1979), *cert den* 444 US 946 (1979); *McLallen v Wyrick,* 498 F Supp 137 (WD Mo, 1980); *People v Jones, supra* (opinion of KAVANAGH, J.); *Ashby v State,* 265 Ind 316; 354 NE2d 192 (1976); *Fex v State,* 386 So 2d 58 (Fla

App, 1980). Under a strict per se approach any promise "however slight" is sufficient to vitiate a confession. Moreover, there is really no critical inquiry into causation "for the law cannot measure the force of the influence used, or decide upon its effect upon the mind of the prisoner, and therefore excludes the declaration if any degree of influence has been exerted." *Bram, supra,* pp 543, 565.

Courts adhering to the totality of the circumstances approach reject the above interpretation of *Bram,* holding that the *Bram* language which seemingly supports a per se rule is merely dicta and that the Court in *Bram* really applied a totality test. See, *e.g., United States v Ferrara,* 377 F2d 16 (CA 2, 1967), *cert den* 389 US 908 (1967); *United States v Williams,* 447 F Supp 631 (D Del, 1978); *People v Jones, supra,* p 373 (opinion of RYAN, J.); *State v Hutson,* 537 SW2d 809 (Mo App, 1976). For instance, the language relied upon by Justice RYAN in *Jones* to support the proposition that *Bram* applied a totality test is the following:

"In approaching the adjudicated cases for the purpose of endeavoring to deduce from them what quantum of proof, in a case presented, is adequate to create, by the operation of hope or fear, an involuntary condition of the mind, the difficulty encountered is, that all the decided cases necessarily rest upon the state of facts which existed in the particular case, and, therefore, furnish no certain criterion, since the conclusion that a given state of fact was adequate to have produced an involuntary confession does not establish that the same result has been created by a different although somewhat similar condition of fact. . . .

"The first of these statements but expresses the thought that whether a confession was voluntary was primarily one of fact, and therefore every case must depend upon its own proof." *Bram, supra,* pp 548-549.

The courts adhering to the totality test also cite a number of other United States Supreme Court cases which they interpret as supporting the adoption of that test. The cases cited include *Mincey v Arizona,* 437 US 385; 98 S Ct 2408; 57 L Ed 2d 290 (1978), *Clewis v Texas,* 386 US 707; 87 S Ct 1338; 18 L Ed 2d 423 (1967), and *Haynes v Washington,* 373 US 503; 83 S Ct 1336; 10 L Ed 2d 513 (1963). Under the totality test, a court looks to the totality of the circumstances to determine whether the defendant's will was overborne in light of all the surrounding circumstances. The existence of a promise of leniency is only one of many factors considered. Every fact that has any relevance is taken into consideration in ascertaining the voluntariness of the confession, including the details of the interrogations and the characteristics of the defendant. Many of the cases relied on by the "totality" courts involved threats as well as promises, whereas here we look to the promise exclusively as far as voluntariness goes.

Today, we would reject both the totality of the circumstances and strict per se tests as they apply to cases involving only promises of leniency and would adopt the simple rule that a confession caused by a promise of leniency is involuntary and inadmissible. There must be a promise and that promise must cause the confession.

We will now consider our analysis of the cases in this area. In general, we find the cases cited by those adhering to the totality test do not involve promises of leniency and hence are inapposite. The cases that are relied upon to support a strict per se rule do not in fact support such a rule. Most of those cases simply reiterate the *Bram* rule, but find it either inapplicable to the facts of the case or fail to expatiate on its application. The cases cited by those advocating the per se rule do, how-

ever, support the proposition that a confession induced by a promise of leniency is involuntary.

## A. *Michigan Law*

There is no precedentially binding Michigan Supreme Court authority that directly addresses the issue of whether a confession induced by a promise of leniency is involuntary. Nonetheless, this Court's decisions seem to support a rule that would render involuntary and inadmissible any confession induced by a promise of leniency.

For over one hundred years this Court has recognized that promises or inducements may render a confession involuntary. In *Flagg v People,* 40 Mich 706 (1879), the defendant confessed after being threatened, implicitly promised leniency, furnished alcohol, and interrogated while handcuffed in a locked room. The defendant, *inter alia,* argued that "any promise or inducement, however slight" was sufficient to render a confession inadmissible. The prosecution seems to have conceded this statement of the law inasmuch as his counterargument was merely that "the burden of proving that an inducement has been held out . . . rests on the prisoner . . . ." *Flagg, supra,* pp 707-708. This Court, holding that the confession was involuntary, stated:

"When a party under arrest is told by the officer that the best thing he can do is to own up—that he had better make a statement;—when it is supposed that a statement can be forced—'knocked'—out of him because 'he was a weak one;' when intoxicating liquors are furnished him to aid in the forcing process; and when on the following morning he is taken in irons to the office of an attorney, and there, in the presence of those hostile to him, with bolted doors, is interrogated, his answers reduced to writing and sworn to, it is idle to say that such a confession was free and voluntarily made, *even although the witnesses may testify that no*

*inducements were made or held out to him.* See *People v Thomas,* 9 Mich 318." *Flagg, supra,* p 709 (emphasis added).

In the context of the arguments of the parties, as above noted, this statement by the *Flagg* Court seems to sanction defendant's statement of the law that a promise, "however slight," will cause the ensuing confession to be declared involuntary.

Other than the above noted brief indication that the *Flagg* Court approved of the rule propounded by the defendant therein, *Flagg* provides little guidance. The Court did not formally embrace the rule and gave no indication as to how the rule should be construed nor how it would be applied.

This Court gave credence to the rule that a promise of leniency will render a confession involuntary in *People v Wolcott,* 51 Mich 612; 17 NW 78 (1883). The defendant in *Wolcott* was questioned throughout the night and following certain promises and threats, the defendant confessed. This Court, holding the confession involuntary, expressed its disdain for the process of obtaining confessions through the use of promises and threats. We implied that while the promises alone would have been sufficient to render the confession involuntary, the additional existence of threats made the confession even more objectionable:

"If the statement of the respondent is believed, not only were promises of favor held out to him as an inducement to confess, but he was threatened with personal violence while in confinement; and though the party accused of the threats denies them, we find sufficient in the evidence of witnesses for the people to convince us that the respondent was treated in a manner which was altogether unwarranted." *Wolcott, supra,* pp 614-615.

Unfortunately, this Court again was not in a

position to consider promises exclusively. *Wolcott* involved more than just a promise of leniency, and hence the analysis was broader in scope than it otherwise would have been. This prevented any real application or development of the promise of leniency rule.

A third case which tends to support the proposition that a confession induced by a promise of leniency is involuntary is *People v Barker,* 60 Mich 277; 27 NW 539 (1886). In *Barker* a detective masquerading as a Chicago attorney obtained a confession from one of the defendants. There was no question that this confession was inadmissible because it had been procured through the use of artifice and deception. The controversy centered on the testimony of a prisoner who had conversed with one of the defendants while both were incarcerated. The defendants alleged that any communications made to the prisoner were tainted by the aforementioned impropriety. This Court held that the subsequent confessional communication was not tainted, but emphasized that if the original confession to the detective had been induced "by a promise or hope of favor . . . ," the subsequent communication by the defendant to the prisoner would have been inadmissible. *Barker, supra,* p 295. This Court also indicated that extra-judicial confessions are of "the lowest grade . . . ." *Barker, supra,* p 295. Thus, although the *Barker* Court upheld the admissibility of the inmate's testimony, it expressed its concurrence in the rule of law that renders involuntary a confession induced by a promise of leniency or hope of favor. Again, however, as with its predecessors, *Barker* does not provide any clue as to practical application, in spite of its expressed disapproval of inducing confessions with promises of leniency.

We conclude that, although *Barker, Wolcott,*

and *Flagg,* are not direct authority for the rule that confessions induced by promises of leniency are involuntary, these cases refer with approval to such a rule. In fact, these cases were subsequently cited by this Court to support just such a proposition:

"Confessions are inadmissible when induced . . . by a promise of favor, made by persons apparently acting by authority. *Flagg v People,* 40 Mich 706; *People v Wolcott,* 51 [Mich] 612; *People v Barker,* 60 [Mich] 277." *People v Clarke,* 105 Mich 169, 176; 62 NW 1117 (1895).

See also *People v Cleveland,* 251 Mich 542, 547; 232 NW 384 (1930); *People v Brockett,* 195 Mich 169, 179; 161 NW 991 (1917). To some degree, the above Michigan cases indicate support for a per se rule, especially *Flagg,* where the "however slight" language is used. Nevertheless, none of these cases actually employed such an analysis, and thus they are not precedentially dispositive.

We recognize that this Court has previously employed a totality of the circumstances test in determining the admissibility of confessions or inculpatory statements. See *People v Paintman,* 412 Mich 518; 315 NW2d 418 (1982), *cert den* 456 US 995 (1982); *People v Brannan,* 406 Mich 104; 276 NW2d 14 (1979); *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972). None of these cases, however, involved the admissibility of confessions induced by promises of leniency. As such, they are inapposite.

In light of the foregoing, we conclude that Michigan case law supports the adoption of a rule making confessions induced by promises of leniency involuntary.[1]

---

[1] Other state courts have split over which test is applicable to determine the admissibility of confessions induced by promises of

## B. *Federal Law*

Recent United States Supreme Court cases seem to support the basic proposition set forth in *Bram* that a confession induced by a promise of leniency is involuntary. See *Hutto v Ross,* 429 US 28, 29-30; 97 S Ct 202; 50 L Ed 2d 194 (1976); *Brady v United States,* 397 US 742, 753-755; 90 S Ct 1463; 25 L Ed 2d 747 (1970); *Malloy v Hogan, supra,* pp 6-7; *Shotwell Mfg Co v United States,* 371 US 341, 347-352; 83 S Ct 448; 9 L Ed 2d 357 (1963). These cases all reiterate the *Bram* rule, but fail to give any indication as to how it would be applied in a situation involving a confession induced by a law enforcement official's promise of leniency.

In *Hutto,* the defendant entered into a plea agreement with the prosecution. Subsequently, and not as part of the plea agreement and not part of any other promise, the prosecutor asked the defendant to make a statement. Defendant accommodated the prosecutor, but later decided to withdraw from the plea bargain. Defendant then sought to suppress his statement.

The United States Supreme Court held that defendant's statement was admissible and that the Eighth Circuit's ruling that "*any* statement made as a result of a plea bargain is inadmissible" was erroneous. *Hutto, supra,* p 30. The *Hutto* Court stated:

"The Court of Appeals reasoned that respondent's confession was involuntary because it was made 'as a result of the plea bargain' and would not have been made 'but for the plea bargain.' [*Mobley ex rel Ross v Meek,* 531 F2d 924, 927, 926 (CA 8, 1976)]. But

leniency. Those supporting the per se rule include *Ashby v State,* 265 Ind 316; 354 NE2d 192 (1976); *Fex v State,* 386 So 2d 58 (Fla App, 1980). Among the cases adhering to the totality of the circumstances test are *State v Davison,* 614 P2d 489 (Mont, 1980); *State v Dixon,* 655 SW2d 547 (Mo App, 1983), *cert den* 464 US 1072; 104 S Ct 982; 79 L Ed 2d 219 (1984).

causation in that sense has never been the test of voluntariness. See *Brady v United States,* 397 US 742, 749-750 (1970). The test is whether the confession was ' "extracted by any sort of threats or violence [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence." ' *Bram v United States,* 168 US 532, 542-543 (1897); see *Brady v United States, supra,* at 753. The existence of the bargain may well have entered into respondent's decision to give a statement, but counsel made it clear to respondent that he could enforce the terms of the plea bargain whether or not he confessed. The confession thus does not appear to have been the result of ' "any direct or implied promises" ' or any coercion on the part of the prosecution, and was not involuntary. *Bram v United States, supra,* 542-543." *Hutto, supra,* p 30.

The clear implication of this discussion is that the focus of the inquiry should be upon the "direct or implied promises," not upon the existence of an unconnected plea bargain. Thus, had the defendant in *Hutto* given his statement as a result of "direct or implied promises," the Court would have held such statement involuntary. See *Gunsby v Wainwright, supra.* The Court, however, fails to explicate further. As such, there is no indication as to how the Court would apply the test if they had been presented with a situation where the confession was the result of "any direct or implied promises." Nonetheless, *Hutto* clearly supports the basic *Bram* rule.

In *Brady v United States, supra,* the defendant testified that he pled guilty to avoid the possible imposition of a death sentence. On appeal, the defendant, *inter alia,* challenged his *plea* as being involuntary. The *Brady* Court, after setting forth the *Bram* test, stated that *Malloy v Hogan* "carried forward the *Bram* definition of compulsion in the course of holding applicable to the States the

Fifth Amendment privilege against compelled self-incrimination." *Brady, supra,* p 753. Nonetheless, the Court found that the considerations present in a confession situation such as *Bram* were not present in a guilty plea situation.

Of similar import is *Shotwell Mfg Co v United States, supra.* In *Shotwell,* the defendants claimed that their right against self-incrimination was violated by the admission of evidence obtained through voluntary disclosures made by them in reliance upon the Treasury Department's "voluntary disclosure policy." This policy permitted delinquent taxpayers to escape possible criminal prosecution by disclosing their derelictions to tax authorities before any investigation had commenced against them. The *Shotwell* Court noted:

"It is of course a constitutional principle of long standing that the prosecution 'must establish guilt by evidence independently and freely secured and may not by coercion prove its charge against an accused out of his own mouth.' *Rogers v Richmond,* 365 US 534, 541 [81 S Ct 735; 5 L Ed 2d 760 (1961)]. We have no hesitation in saying that this principle also reaches evidence of guilt induced from a person under a governmental promise of immunity, and where that is the case such evidence must be excluded under the Self-Incrimination Clause of the Fifth Amendment. See *Bram v United States,* 168 US 532, 542-543; *Hardy v United States,* 186 US 224, 229 [18 S Ct 183; 42 L Ed 568 (1902)]; *Wan v United States,* 266 US 1, 14 [45 S Ct 1; 69 L Ed 131 (1924)]; *Smith v United States,* 348 US 147, 150 [75 S Ct 194; 99 L Ed 192 (1954)]. The controlling test is that approved in *Bram:* ' "a confession, in order to be admissible, must be free and voluntary: that is, . . . not . . . obtained by any direct or implied promises, however slight . . . ." ' *Bram v United States, supra,* 542-543. Evidence so procured can no more be regarded as the product of a free act of the accused than that obtained by official physical or psychological coercion." *Shotwell, supra,* pp 347-348.

The Court, however, held that the evidence therein was not obtained in a manner offensive to the Fifth Amendment:

"The Treasury's 'voluntary disclosure policy,' addressed to the public generally and not to particular individuals, was not an invitation aimed at extracting confessions of guilt from particular known or suspected delinquent taxpayers. Petitioners' position is not like that of a person, accused or suspected of crime, to whom a policeman, a prosecutor, or an investigating agency has made a promise of immunity or leniency in return for a statement. In those circumstances an inculpatory statement would be the product of inducement, and thus not an act of free will. No such inference, however, is allowable in the context of what happened here." *Shotwell, supra,* p 348.

Consequently, although the *Shotwell* Court rejected the applicability of *Bram* to the facts present there, the Court clearly recognized that under *Bram* a confession would be rendered involuntary where the "investigating agency has made a promise of immunity or leniency in return for a statement." *Shotwell, supra,* p 348. Like *Hutto* and *Brady,* however, *Shotwell* provides no real guidance in terms of actual application.

The foregoing cases all recognize the continued vitality of the *Bram* "promise of leniency" test by citing the "however slight" language. None of these cases states that *Bram* should be used in conjunction with a totality test, although *Bram* says that "every case must depend upon its own proof," *Bram, supra,* p 549. Rather, the implication in all these cases is that a promise of leniency alone, which induces inculpatory statements, is sufficient to render those statements involuntary. This, of course, is not to say that the United States Supreme Court has never employed or recognized

a totality of the circumstances test. In fact, we acknowledge that they have recognized such a test. See, *e.g., Mincey v Arizona,* 437 US 385; 98 S Ct 2408; 57 L Ed 2d 290 (1978); *Clewis v Texas,* 386 US 707; 87 S Ct 1338; 18 L Ed 2d 423 (1967); *Haynes v Washington, supra.* These cases, however, do not involve promises of leniency, but other forms of coercion. Whenever the Supreme Court has discussed the admissibility of confessions induced by a promise of leniency, they have typically cited *Bram* and strongly implied that a promise alone which induces a confession renders the confession involuntary. See *Hutto, supra; Brady, supra; Shotwell, supra.*

Unfortunately, neither *Hutto, Brady,* nor *Shotwell* involved situations which called for the application of the *Bram* test. Consequently, they provide no guidance as to whether the United States Supreme Court would apply the *Bram* "however slight" rule as a per se test, or would adopt a more flexible posture which could construe that case as simply standing for the basic proposition that a confession induced by a promise of leniency is involuntary.[2]

C. *Conclusion*

Both Michigan and United States Supreme Court cases refer with approval to the *Bram* "however slight" language or language of similar import, thereby clearly demonstrating their support for the proposition that a promise of leniency

---

[2] We note that the federal district and circuit courts have split over the proper test applicable under these circumstances. Cases that seem to support the adoption of a per se test include *Gunsby v Wainwright,* 596 F2d 654 (CA 5, 1979), *cert den* 444 US 946 (1979); *McLallen v Wyrick,* 498 F Supp 137 (WD Mo, 1980). Those that favor the totality of the circumstances test include: *United States v Grant,* 622 F2d 308 (CA 8, 1980); *United States v Ferrara,* 377 F2d 16 (CA 2, 1967), *cert den* 389 US 908 (1967); *United States v Williams,* 447 F Supp 631 (D Del, 1978).

alone can be sufficient to render a confession involuntary. We are, however, unable to find a single Michigan or United States Supreme Court case where the *Bram* rule was applied. Therefore, we are convinced that *Bram* should not be applied with the "literalness" that defendants advocate in urging us to adopt the strict per se rule. The courts have generally been very flexible in determining the voluntariness of confessions. For example, as previously noted, in other contexts the rule has been to ascertain the voluntariness of confessions by looking at all the surrounding circumstances to determine whether the defendant's will was overborne. Thus, today, under Const 1963, art 1, § 17, we would adopt a test that we think comports with both the law of confessions and the law specifically relating to confessions induced by a promise of leniency. That test embodies elements of both the per se rule and the totality rule and holds that a confession induced by a law enforcement official's promise of leniency is involuntary and inadmissible.

## V. THE TEST

Now that we are inclined toward a constitutional rule that a confession caused by a promise of leniency is involuntary, the next question is what are the parameters of that rule. In applying the rule, we must first determine whether a promise of leniency exists, and, second, whether the promise caused the confession.

In determining whether the communication from the authorities to the defendant is sufficient to constitute a promise of leniency, we will focus upon defendant's state of mind. Thus, it is from defendant's perspective that we will view the alleged promises. See *Grades v Boles,* 398 F2d 409,

412 (CA 4, 1968); *State v Orscanin,* 283 NW2d 897, 900 (Minn, 1979), *cert den* 444 US 970 (1979); *State v Jordan,* 114 Ariz 452, 455; 561 P2d 1224 (1976), *vacated in part* 438 US 911 (1978). See also *People v Robinson,* 386 Mich 551, 558; 194 NW2d 709 (1972). The inquiry will be whether the defendant is likely to have reasonably understood the statements in question to be promises of leniency. See *Grades, supra,* p 412. See also *State v Hoopes,* 534 SW2d 26, 35 (Mo, 1976).

Such an inquiry will necessarily depend upon the facts and circumstances in which the language is used. See 29 Am Jur 2d, Evidence, § 565, citing *Frazier v Florida,* 107 So 2d 16, 23-24 (Fla, 1958). Nonetheless, we wish to emphasize that mere adjurations or exhortations to tell the truth, without more, are insufficient to vitiate the voluntariness of a confession. See *People v Foster,* 211 Mich 486, 493; 179 NW 295 (1920); *United States v Pomares,* 499 F2d 1220, 1222 (CA 2, 1974), *cert den* 419 US 1032 (1974); *State v Dixon,* 655 SW2d 547, 556 (Mo App, 1983), *cert den* 464 US 1072; 104 S Ct 982; 79 L Ed 2d 219 (1984); *Pamer v State,* 426 NE2d 1369, 1374 (Ind App, 1981); *State v Tardiff,* 374 A2d 598, 601 (Me, 1977). See generally 3 Wigmore, Evidence (Chadbourn rev), § 832; 3 Wharton, Evidence (13th ed), § 674; 29 Am Jur 2d, Evidence, § 565; 22 Am Jur, Proof of Facts 2d, p 555. Such adjurations and exhortations are simply not promises. However, admonitions to tell the truth, coupled with other factors which could lead the defendant to believe that it is in his best interest to cooperate may amount to a promise of leniency. In addition, the promise need not be express, as subtle intimations can convey as much as express statements. We concur with the Court in *People v Pallister,* 14 Mich App 139, 148; 165 NW2d 319 (1968), citing *In re Valle,* 364 Mich 471,

477; 110 NW2d 673 (1961), that "[t]here is no room for a distinction between tacit and express understandings."

If from the above inquiry we determine that no promise of leniency was made, then we will pursue the matter no further. If, however, we conclude that a promise of leniency was in fact made, then we will proceed to ask whether that promise causally induced the defendant's confession.

As in determining whether a promise exists, we will focus upon the defendant's state of mind to determine if that promise caused him to confess. See *Grades v Boles, supra,* p 412; *McLallen v Wyrick,* 498 F Supp 137, 139 (WD Mo, 1980); *State v Jordan, supra,* p 455. See also *People v Robinson, supra,* p 558. The promise, however, must have more than an attenuated causal connection with the confession, but need not be the only or even principal motivating factor. Rather, the promise must have been one relied upon by the defendant in making his decision and one that at least in part prompted the defendant to confess. See *Grades v Boles, supra,* pp 412-413; *State v Jordan, supra,* p 455.

In the application of the foregoing test, we will not draw distinctions between promises on the basis of who initiates the bargaining. The people contend that defendants are in no position to complain that their statements are involuntary where they initiate the discussion. We disagree, and concur in the following analysis by Justice KAVANAGH:

"The fact that the defendant initiates the bargaining does not mean that the defendant is not influenced by the state's promises. The confession is no more reliable simply because the defendant begins the negotiating. In *People v Wolcott,* 51 Mich 612, 615; 17 NW 78 (1883),

Justice COOLEY agreed with the reasoning of many other courts and found that no reliance can be placed on admissions of guilt obtained by assurances of leniency 'for the very obvious reason that they are not made because they are true, but because, whether true or false, the accused is led to believe it is for his interest to make them.' [Citations omitted.] However, it is no less in the defendant's interest to accept a plea bargain when he initiates the bargaining than when bargaining is initiated by the state. Therefore, because the defendant is still influenced by the state's promises of leniency and there is no reason to conclude that a confession pursuant to a plea bargain initiated by the state is any more reliable than the same confession when bargaining is initiated by the defendant, we find no reason to conclude that a confession is voluntary merely because the defendant initiates the bargaining." *People v Jones, supra,* pp 362-363 (opinion of KAVANAGH, J.).

While the focus of Justice KAVANAGH's analysis is on plea discussions, his reasoning is equally applicable to discussions not involving pleas. Whether or not the defendant is influenced by a promise of leniency does not turn upon who initiated the discussions leading to the promise. If the defendant initiates the discussions, he is no less influenced by the promise than if the prosecutor initiated the discussions.

Similarly, we fail to see any reasonable basis for distinguishing between promises affecting the charges against the defendant, and promises granting a benefit to some third person. See *State v. Williamson,* 339 Mo 1038, 1043-1045; 99 SW2d 76 (1936). Defendants are often more concerned with the welfare of relatives or close friends than they are with their own welfare. Hence, a promise to a defendant guaranteeing the release of his wife is probably more likely to induce his confession than a promise of some benefit to him. See generally 29

Am Jur 2d, Evidence, § 562; 22 Am Jur, Proof of Facts 2d, 555-559; 80 ALR2d 1428. In fact, this Court has specifically recognized that a defendant's affection for his loved ones should not be used as a tool for prying a confession from him. See *People v Robinson, supra* (defendant confessed to obtain the release of his wife); *People v Prestidge,* 182 Mich 80; 148 NW 347 (1914) (defendant confessed after earlier hearing his wife screaming and after an officer convinced defendant that his wife should know the truth). See also *Lynumn v Illinois,* 372 US 528; 83 S Ct 917; 9 L Ed 2d 922 (1963); *Rogers v Richmond,* 365 US 534; 81 S Ct 735; 5 L Ed 2d 760 (1961).

In this regard, we likewise do not see any basis for differentiating between promises made with respect to relatives from those made with respect to intimate friends. A promise made to the defendant regarding a close friend can be just as enticing as one made to the defendant regarding a relative. The focus is properly upon the effect of the promise rather than the relationship of the parties.[3] See *Ferguson v Boyd,* 566 F2d 873, 878, fn 7 (CA 4, 1977).

In accordance with the foregoing, we are convinced that the law and logic support the adoption in this state of the rule that a confession induced by a promise of leniency is involuntary and inadmissible. We must now turn to the application of our test to the cases before us.

---

[3] We also emphasize that the giving of *Miranda* warnings and advice of counsel are not determinative of a confession's admissibility. While they may tend to indicate that defendant's decision was an intelligent choice of available alternatives, they do not negate the pressure of inducement of the promise. *People v Jones,* 416 Mich 354, 363 and fn 7; 331 NW2d 406 (1982), *cert den* 460 US 1084 (1983), citing *People v Overturf,* 67 Ill App 3d 741, 744; 385 NE2d 166 (1979); *State v Tardiff,* 374 A2d 598, 601 (Me, 1977). Thus, again, it is the promise and the effect of that promise that are conclusive.

## VI. Application of Test

Before we apply the test just enunciated, we note that several of the defendants here have raised the additional issue that MRE 410 would bar the admission of their confessions. While we would decline to decide the MRE 410 issue because we granted leave only to consider whether a promise of leniency would render an extra-judicial confession involuntary, we opine that defendant Bradley is the only defendant with a viable argument. In fact, under *Jones* and federal cases interpreting FRE 410 and Rule 11(e)(6) of the Federal Rules of Criminal Procedure, which formerly were nearly identical to MRE 410, Bradley's claim seems to possess considerable merit. See *People v Jones, supra; United States v Robertson,* 582 F2d 1356 (CA 5, 1978). Nonetheless, as noted above, we decline to base our decision on this ground.

In applying the test announced today to the facts of the five cases before us, we will employ the standard of review we have typically employed in voluntariness cases. Thus, we must examine the record and "make an independent determination of the ultimate issue of voluntariness." If "we do not possess a definite and firm conviction that a mistake was committed by the trial judge in his ruling, we will affirm that ruling." *People v McGillen #1,* 392 Mich 251, 257; 220 NW2d 677 (1974).

In *People v Conte,* we think there is little doubt that a promise was in fact made and that defendant understood it to be such. The only question is whether that promise to release and not charge Kathleen Stevenson with a crime caused defendant to confess. We think that it did.

The promise clearly had more than an attenuated causal connection with the confession. In fact,

the defendant testified that his sole reason for confessing was to obtain the release of Ms. Stevenson. The record supports his testimony. Defendant repeatedly stated throughout the course of his confession that he was cooperating only to help Ms. Stevenson. The authorities admitted hearing the defendant make several such statements. The prosecutor admitted that he at one point prodded the defendant by telling him that if he cooperated he would be helping Ms. Stevenson. Moreover, the authorities seem to agree that defendant felt no remorse for having committed the crime. Thus, there is no evidence that defendant confessed for any reason other than to protect Ms. Stevenson.

Finally, we note that in accordance with our previous discussion, it matters not that defendant may have initiated the negotiations, nor that the promise involved a third person who was not a relative. Defendant had lived with Ms. Stevenson for four months and helped support her and her two children. The evidence shows that his confession was given solely to protect her.

We do not possess a definite and firm conviction that the circuit court made a mistake in suppressing the confession. Accordingly, we would reverse the decision of the Court of Appeals and would remand for a new trial.

As in *Conte,* we think that it is clear that a promise was made in *People v Meaker* and that defendant understood it to be such. The authorities clearly promised defendant a reduced bond in exchange for his agreement to take an additional polygraph test and to stay away from the victim's family. The defendant understood these terms and agreed to them. The real question in *Meaker* is whether this promise caused the defendant to confess. We think the answer is no.

The defendant's freedom on bond was not condi-

tioned on his passing the polygraph examination or giving a new statement. The promise was not made in return for a statement. In fact, it seems that defendant's intent throughout was to mislead and deceive the authorities rather than to cooperate and provide the authorities with the information they sought. The record gives no indication that the defendant relied upon the promise to give him a reduced bond in making his decision to inculpate himself. Although the defendant might not have given these statements but for the agreement to take a polygraph examination, "causation in that sense [is not and] has never been the test of voluntariness." *Hutto, supra,* p 30. The defendant had given three statements before his arrest and had taken a polygraph examination. The second polygraph examination, which was a condition of the agreement and which we note defendant refused to take, was not for the purpose of extracting a confession, but rather to verify a prior statement. Defendant understood this purpose. The causal connection here is simply too attenuated.

In accordance with the foregoing, we do not possess a definite and firm conviction that the trial judge made a mistake in failing to suppress defendant's statements. Therefore, we would reverse the judgment of the Court of Appeals and would reinstate defendant's convictions.

In *People v Bradley,* like *Conte* and *Meaker,* we do not think that it can be seriously questioned that a promise was in fact made to the defendant. Detective Gizzi clearly offered defendant Bradley a reduced charge in exchange for, *inter alia,* his confession. Defendant understood this offer to be a promise of leniency. Again, the only question here deals with causation. We find the causal nexus present.

First, it is of no import that the defendant may have initiated the discussions which led to the ultimate agreement. The focus is solely on the effect of the promise. There is no indication from the record that the defendant confessed out of remorse. The defendant steadfastly denied any involvement in the incident before he was presented with the bargain. During his discussions with Detective Gizzi, the defendant expressed a desire to be released on bond. Detective Gizzi informed defendant that this could only be accomplished if defendant agreed to the terms of the bargain. Defendant then agreed. Given the reduction from first-degree murder to breaking and entering, it is not surprising that defendant agreed to make a statement.[4] The promise made to defendant was one relied upon by him and one that in substantial part, if not solely, motivated his confession.

We are left with a definite and firm conviction that the trial judge made a mistake in failing to suppress defendant's statements. We would reverse the judgment of the Court of Appeals and would remand for a new trial.

In *People v Norman,* there is again no question as to the existence of a promise of leniency. The only question here, if indeed it is a question, is whether the requisite causal nexus exists. We think it is clear that such a nexus does exist.

Again, it is of no import that the defendant initiated the discussions that led to the plea agreement. It is clear from the facts and record that the promises made in the plea agreement provided the sole motivation for defendant's incriminating testimony. The defendant did not confess, nor at any

[4] The defendant testified that he made the statement because of the promise to reduce the charge.

time express any desire to confess, in the absence of the promise of leniency given by the prosecution. Nor is there any indication whatsoever that defendant offered the incriminating testimony out of remorse or an inner desire to tell the truth.[5] We would hold that the promises given defendant in exchange for his testimony caused such testimony.

In accordance with the foregoing, we are left with a definite and firm conviction that the trial judge made a mistake in refusing to suppress defendant's testimony. Therefore, we would affirm the decision of the Court of Appeals.

In *People v Cooper,* unlike the previous four cases, the existence of a promise is not so clear. Nonetheless, we are persuaded that a promise of leniency was given to the defendant and most importantly that defendant is likely to have reasonably understood the statements made to him to be a promise.

As noted earlier, the determination of whether a promise was made and understood will depend upon the facts and circumstances in which the language was used. In addition, we must view the comments made to the defendant from the defendant's perspective.

In *Cooper,* the defendant had no prior criminal experience. He was placed in a State Police patrol car and accused of being involved in the setting of a fire. Officer Rowley admitted that the defendant became upset after he was placed in the patrol car and questioned. Despite defendant's denial of any involvement, Officer Rowley emphasized their relationship, told defendant he could confide in the officer and reminded defendant that he had never given the defendant a bad deal. In this context,

---

[5] In fact, defendant testified at trial that he gave the inculpatory testimony only to obtain concessions from the prosecutor.

Officer Rowley proceeded to tell the defendant that his cooperation would be expressed in the officer's report and that no one would kick defendant in the teeth if he cooperated. It was at this point that defendant confessed.

We think that under the above circumstances defendant is likely to have reasonably understood the officer's comments to be a promise of leniency. As earlier noted, "[t]here is no room for a distinction between tacit and express understandings." *People v Pallister, supra,* p 148, citing *In re Valle, supra,* p 477. In fact, the defendant testified that he understood Officer Rowley's comments to mean that if he cooperated he would receive a lighter sentence.

The next question is whether the promise of leniency caused the defendant's confession. We would hold that it did. The defendant denied any involvement in the fire until the officer extended defendant a promise of leniency. There is no evidence that the defendant confessed out of remorse or any other inner desire to tell the truth. While the officer's promise may not have been the sole factor causing defendant to confess, we think that defendant relied upon that promise and that it, at least in significant part, prompted his confession.

We have a definite and firm conviction that the trial judge made a mistake in declining to suppress defendant's confession. We would affirm the judgment of the Court of Appeals.

## VII. CONCLUSION

Today we have adopted a position that we think best comports with the constitution, the common law, and public policy. We would hold that under Const 1963, art 1, § 17, a confession or inculpatory statement induced by a law enforcement official's

promise of leniency is involuntary and inadmissible as follows. In determining whether the confession or inculpatory statement was induced by a promise of leniency, the first inquiry is whether defendant is likely to have reasonably understood the official's statements to be a promise of leniency, and the second inquiry is whether the promise was one relied upon by the defendant in making his decision to offer an inculpatory statement and one that prompted him in fact to give that statement. If the answer to either of these questions is negative, the statements are admissible. If the answer to both questions is affirmative, the inculpatory statement is involuntary and inadmissible.

In accordance with this test and the foregoing application thereof to the five cases before us, we would issue the following orders:

In *Conte,* we would reverse the judgment of the Court of Appeals and would remand for a new trial.

In *Meaker,* we would reverse the judgment of the Court of Appeals and would reinstate defendant's convictions.

In *Bradley,* we would reverse the judgment of the Court of Appeals and would remand for a new trial.

In *Norman,* we would affirm the decision of the Court of Appeals.

In *Cooper,* we would affirm the decision of the Court of Appeals.

KAVANAGH and LEVIN, JJ., concurred with WILLIAMS, C.J.

BOYLE, J. We granted leave in these cases and directed the parties to brief the issue as to whether the defendants' confessions were involun-

tary because improperly induced by promises of leniency.

We would hold that a defendant's inculpatory statement is not inadmissible per se if induced by a promise of leniency, and that admissibility is to be determined, given the totality of the circumstances, by whether the prosecution has demonstrated that the statement is voluntary.

We would affirm the judgment of the Court of Appeals in *People v Conte* and *People v Bradley;* we would reverse the judgment of the Court of Appeals in *People v Meaker* and *People v Cooper* and reinstate the trial court's judgment. In *People v Norman,* we would reverse and remand to the Court of Appeals.

I

In *People v Jones,* 416 Mich 354; 331 NW2d 406 (1982), *cert den* 460 US 1084; 103 S Ct 1775; 76 L Ed 2d 347 (1983), the participating members of the Court[1] agreed that the defendant's statement was inadmissible. The Court divided, however, in the rationale of the *Jones* result, with three justices[2] applying a rule of inadmissibility per se to an inculpatory statement made as a result of a law enforcement officer's promise of leniency "however slight," and three justices[3] opining that the proper test of admissibility is the voluntariness of the statement.

Three basic issues are presented by some or all of these appeals. First, whether a rule of exclusion per se is required by reason of the command of the United States Constitution, or by precedent of this Court; second, assuming a negative answer to the

[1] Justice RILEY did not participate.

[2] Justices KAVANAGH, LEVIN, and the Chief Justice.

[3] Justices RYAN, FITZGERALD, and COLEMAN.

first question and adoption of a totality of the circumstances test of voluntariness, whether the particular statements in each case are admissible; and third, whether the statements are inadmissible under MRE 410.[4]

We conclude that *Bram v United States,* 168 US 532; 18 S Ct 183; 42 L Ed 568 (1897) does not compel the conclusion that federal law requires that a confession prompted by any concession, however slight, is inadmissible. In *Bram,* the defendant, who was in custody aboard a ship, on an accusation of murder, was forced to strip and thereafter gave an inculpatory statement. As the United States Supreme Court thereafter noted, *Bram* was in fact a determination that

"[i]n *such circumstances,* even a mild promise of leniency was deemed sufficient to bar the confession, not because the promise was an illegal act as such, but because defendants at such times are too sensitive to inducement and the possible impact on them too great to ignore and too difficult to assess." *Brady v United States,* 397 US 742, 754; 90 S Ct 1463; 25 L Ed 2d 747 (1970). (Emphasis added.)

The United States Supreme Court has never adopted a rule excluding inculpatory statements per se. In some thirty different cases decided between *Brown v Mississippi,* 297 US 278; 56 S Ct 461; 80 L Ed 682 (1936), and *Escobedo v Illinois,* 378 US 478; 84 S Ct 1758; 12 L Ed 2d 977 (1964),

---

[4] "Except as otherwise provided in this rule, evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer. However, evidence of a statement made in connection with, and relevant to, a plea of guilty, later withdrawn, a plea of nolo contendere, or an offer to plead guilty or nolo contendere to the crime charged or any other crime, is admissible in a criminal proceeding for perjury or false statement."

the Court decided the issue of voluntariness of a defendant's confession for purposes of the Fourteenth Amendment.

"Those cases yield no talismanic definition of 'voluntariness,' mechanically applicable to the host of situations where the question has arisen . . . .

* * *

"This Court's decisions reflect a frank recognition that the Constitution requires the sacrifice of neither security nor liberty . . . .

"In determining whether a defendant's will was overborne in a particular case, the Court has assessed the totality of all the surrounding circumstances, *Schneckloth v Bustamonte*, 412 US 218, 224, 225, 226 [93 S Ct 2041; 36 L Ed 2d 854] (1973)."

"A per se approach is not supported by precedent," *People v Jones, supra,* p 375 (opinion of RYAN, J.).

The totality of circumstances rule is consistent with the underlying reason for excluding involuntary confessions, that is, that the nature of a threat or promise is such that the accused might be led to make a statement, regardless of its truth or falsity, 3 Wigmore, Evidence, §§ 821, 822.

We recognize that establishing a "bright line" test such as that advanced by Justice KAVANAGH in *Jones, supra,* would have the virtue of avoiding difficult factual interpretations by the trial and appellate courts, as well as obviating the clear potential for conviction that an erroneously admitted statement would pose. Nevertheless, we conclude that the totality of circumstances test strikes the appropriate balance between the admission of highly probative and relevant evidence and inadmissibility of a statement deemed unreliable because of the coercive effect of the offered inducement. A contrary analysis would lead to the exclu-

sion of otherwise highly probative evidence, despite the fact that there was no indication that the concession offered actually operated to render the defendant's statement involuntary, that is, not a product of his own volition.[5] The totality of circumstances test "is 'judicial' in its treatment of one case at a time [citation omitted], flexible in its ability to respond to the endless mutations of fact presented, and ever more familiar to the lower courts." *Miranda v Arizona,* 384 US 436, 508; 86 S Ct 1602; 16 L Ed 2d 694 (1966) (Harlan, J., *dissenting).*

The totality of circumstances test for voluntariness requires consideration of a multiplicity of factors, including, but not limited to, the nature of the inducement, *Brady v United States,* 397 US 742; 90 S Ct 1463; 25 L Ed 2d 747 (1970), the length and conditions of detention, *Haynes v Washington,* 373 US 503; 83 S Ct 1336; 10 L Ed 2d 513 (1963), the physical and mental state of the defendant (including his age, mentality, and prior criminal experience), *Lynumn v Illinois,* 372 US 528; 83 S Ct 917; 9 L Ed 2d 922 (1963), the conduct of the police, *Reck v Pate,* 367 US 433; 81 S Ct 1541; 6 L Ed 2d 948 (1961), and the adequacy and frequency of advice of rights, *Miranda v Arizona.*

If, after considering all relevant factors, the court concludes that the inducements offered did not overcome the defendant's ability to make a voluntary decision to make a statement, the statement(s) will be admissible. In all such cases, the burden is on the people to demonstrate voluntari-

---

[5] In this connection we note that the per se rule would disadvantage defendants from seeking, or accepting, concessions advantageous to them. Since the purpose of the system is the ascertainment of truth, in the absence of unlawfully coercive circumstances there is no legitimate reason for the creation of a rule which would lead to the refusal of law enforcement officials to engage in bargaining with a defendant which is mutually advantageous to both.

ness by a preponderance of the evidence, *Lego v Twomey,* 404 US 477; 92 S Ct 619; 30 L Ed 2d 618 (1972).

## II

We apply the totality of circumstances test and the enumerated factors to the cases before us to conclude that in each instance the statement was not the product of a situation which overbore the defendant's will, *Rogers v Richmond,* 365 US 534; 81 S Ct 735; 5 L Ed 2d 760 (1961).

Augustino Conte was arrested in connection with a robbery and shooting death at the Arts & Gems jewelry store. On the day following his arrest, on the way to arraignment, Conte volunteered that if he could help himself he could give information on some other murders. Some time thereafter appellant was interviewed by an assistant prosecutor. He was advised of his rights, and indicated he would talk about other murder cases in exchange for the prosecutor's agreement not to charge his paramour Kathleen Stevenson in any of the murders. Appellant was told there would be no deals as to the Arts and Gems murders or any other case with which he was involved.

We conclude that the promise solicited by the defendant to benefit his girlfriend did not overbear appellant's will and that the statement was voluntary. The promise was of a collateral benefit rather than a direct benefit to the defendant, and it was solicited by him. Although there could conceivably be circumstances in which the nature of a collateral benefit might be such as to render a statement involuntary, where, as in the instant case, the speaker obtained no direct benefit to himself, it is less likely that the statement has been induced by fear or hope as to the charge

which the accused faces. Likewise, while a promise which was solicited by an accused might be thought to demonstrate the importance of the concession and might, in combination with police exploitation, render a statement involuntary, see, e.g., *People v Clark,* 263 Cal 2d 87, 90-92; 69 Cal Rptr 218 (1968); *Ferguson v Boyd,* 566 F2d 873 (CA 4, 1977) (en banc), the fact of solicitation suggests that the defendant was acting rationally and therefore tends to dissipate a claim that the statement was compelled. Anno: *Police statements that if suspect confesses his relatives will be released from custody or not be arrested, as rendering confession involuntary,* 80 ALR2d 1428, 1438; *United States v McShane,* 462 F2d 5 (CA 9, 1972); *State v Anderson,* 298 NW2d 63 (Minn, 1980). Defendant Conte is a 45-year-old man. There is no credible evidence that his physical condition made him vulnerable; nor is there any credible contention of undue length or improper conditions of detention or police or prosecution misconduct. We conclude therefore that defendant Conte's will was not overborne and that his confession was voluntary.

We also conclude that MRE 410 is inapplicable in this case since defendant was not engaged in plea bargaining for reduced charges against himself.

In *Meaker,* the Court of Appeals found that two statements made by the defendant, following an agreement between the police, prosecution, defendant, and defense counsel to reduce defendant's bond were involuntary. The statements were made one week after defendant's release from custody, after advice of rights and waivers and with the knowledge by counsel that the interviews were taking place. There is no evidence in the record that defendant's statements were other than the

product of his own free will and intelligence. He
and his counsel negotiated the release, thus the
condition that a polygraph examination be taken
was a negotiated term of the bond reduction,
entered into with the assistance of counsel. Defen-
dant was not in custody at the time either of the
statements was made, he was not subjected to
prolonged interrogation, and he was scrupulously
advised of all of his rights. Since he never actually
took the polygraph examination, the "compulsion"
that must be advanced here is Mr. Meaker's con-
cern that his failure to respond to questions would
result in the revocation of his bond and his return
to jail. While the possibility of incarceration may
be said to be inherently coercive, it has never been
held to itself require a conclusion that a defen-
dant's statements were involuntary. We conclude
that defendant Meaker's statements were volun-
tary.

*People v Bradley* involves both an inducement
issue and the question of the effect of MRE 410
on the admissibility of statements made in con-
nection with an agreement to dismiss charges.

By contrast with *Conte,* the nature of the prom-
ise here given was a substantial benefit to defen-
dant, the dismissal of a first-degree murder charge
and a reduced charge of breaking and entering in
exchange for his testimony against a codefendant.
Moreover, the conduct of the police officials in
response to defendant's concerns about bond was
such as to make it clear to defendant that if an
agreement were reached he would likely be re-
leased on bond. We conclude, however, that the
promise was not the kind of inducement "that,
would, by itself, make the confession involuntary,"
*United States v Ferrara,* 377 F2d 16, 18 (CA 2,
1967).

Defendant was not subjected to prolonged deten-

tion or protracted interrogation, he is of average intelligence with some college education, he was repeatedly advised of his rights, and he initiated the chain of events leading to the agreement. Analyzing the nature of the promise, the characteristics of the accused, and the details of the interrogation, we conclude that defendant Bradley's statement was voluntary.

We further find, that MRE 410 does not bar use of defendant's inculpatory statement. We cannot conclude from this record that defendant's statement was made in connection with an offer or attempt to plead guilty. The statement in question was made to a law enforcement official, and the officer was acting to effectuate the bargain being offered by the prosecution. We recognize that in such a situation FRE 410 has been extended to *plea* discussions. *United States v Grant,* 622 F2d 308 (CA 8, 1980). We have not discovered a case decided under a correct construction of Rule 410 or Rule 11(e)(6) which would extend the rule of inadmissibility to a situation that did not involve some plea reference. Accordingly, we conclude that MRE 410 did not preclude use of the statement made to Detective Gizzi on December 1, 1978.[6]

---

[6] MRE 410 is substantially identical to FRE 410, incorporated in terms into FR Crim P 11(e), Guilty Pleas. As the Notes of Advisory Committee on Rules for the Federal Rules of Criminal Procedure explain the 1979 amendment to Rule 11(e)(6), this section is limited to discussions and agreements with the prosecuting attorney.

"It thus fully protects the plea discussion process authorized by Rule 11 without attempting to deal with confrontation between suspects and law enforcement agents. The point is that such cases are not covered by the per se rule of 11(e)(6) and thus must be resolved by that body of law dealing with police interrogations."

The referenced amendment to FR Crim P 11(e)(6) changed the words "statements made in connection with and relevant to, a plea of guilty later withdrawn" to "any statement made in the course of plea discussions with an attorney for the government." This language was added to make clear that even an attempt to open plea bargaining with the government's attorney is covered by the rule of inadmissibility. *United States v Brooks,* 536 F2d 1137 (CA 6, 1976). However, as

In *People v Norman,* the issue is the admissibility of prior testimony as part of a partially executed plea bargain. In pertinent part, the facts are that, having previously been convicted of first-degree murder and while awaiting sentence, defendant contacted the prosecutor's office and negotiated an agreement to testify against his accomplice in four other killings, Reginald Johnson, in exchange for an agreement to permit him to plead guilty to second-degree murder (the Allen Jewelry Company killings). A preliminary examination was held in the Allen Jewelry case. Defendant waived his own examination, testified that Johnson was his accomplice, and described in detail the circumstances of the robbery-murder; thereafter defendant declined to plead guilty to second-degree murder. His testimony at the examination was admitted over objection of counsel at his trial, and defendant was convicted of felony murder and armed robbery.

There is no doubt that defendant's testimony was given in fulfillment of his plea bargain agreement. MRE 410 was not adopted until March 1, 1978, after the date of the event here in question, and thus does not control the outcome of this case. We proceed therefore to an analysis of pre-Rule 410 case law.

We are unable to agree with the Court of Appeals conclusion that MRE 410 was consistent with prior Michigan law. While it is true that evidence of a previously withdrawn plea of guilty was inadmissible prior to the adoption of MRE 410, *People v Street,* 288 Mich 406; 284 NW 926 (1939), *People v Lombardo,* 301 Mich 451; 3 NW2d 839 (1942), *People v MacCullough,* 281 Mich 15;

both the amendment and the commentary clearly indicate, an otherwise voluntary admission to a law enforcement official is not rendered inadmissible by the rule.

274 NW 693 (1937), and *People v Mulvaney,* 171
Mich 272; 137 NW 155 (1912), would all appear to
support the proposition that statements of a defen-
dant, as distinct from an actual plea of guilty were
admissible. We conclude that prior to MRE 410
Michigan law was unclear on this issue.

We are also persuaded that defendant's state-
ment was an admission, MRE 801(d)(2), and not a
statement against penal interest, MRE 804(b)(3).

Defendant's testimony at preliminary examina-
tion was a confession that *he* had executed four
persons by means of one shot into the head of each
person. It was given in the context of an agree-
ment that defendant would be convicted of second-
degree murder by his subsequent plea in this
cause. Hence, there was no requirement of una-
vailability or of a finding that the statement was
so far against his interests that a reasonable per-
son would not have made the statement unless it
were true. MRE 804(b)(3).

We conclude that the only potential barrier to
the admission of this testimony is the fact that it
was given as the result of an inducement. We
further find that the statement was voluntary. The
bargain was solicited by a sophisticated suitor
seeking to avoid a mandatory life sentence. The
statement was not made while defendant was in
custody, but rather was made in open court. None
of the indicators of involuntariness which we have
set forth today are here implicated. We have no
doubt that defendant's testimony was the product
of defendant's free will.

Finally, while we also conclude that defendant's
statement was voluntary in *People v Cooper,* we
note that *Cooper* is a striking illustration of the
mischief that would be produced by adoption of a
rule of exclusion per se. The alleged inducement in
*Cooper* is no more than the officer's statement to

an unincarcerated defendant, properly advised of his rights, that his cooperation would be reflected in the officer's report, but that the fact of charge and the severity of the charge would be for the prosecutor to determine. Acceptance of the per se test in this context would mean that any communication of cooperation on a defendant's part, would render defendant's statement inadmissible. As in every life situation which requires choice, the cases before us each present a situation where some constraint is involved, some hoped for benefit sought, and some detriment sought to be avoided. Such considerations do not, without more, suggest that the decision to speak is involuntary or that the statement is unreliable.

The judgment of the Court of Appeals should be affirmed in *People v Conte* and *People v Bradley.* In *People v Meaker, People v Norman,* and *People v Cooper,* we would vacate the judgment of the Court of Appeals. In *Meaker* and *Cooper,* we would reinstate the judgment of the trial court. *Norman* should be remanded to the Court of Appeals for consideration of the remaining issues.

RYAN, J., concurred with BOYLE, J.

BRICKLEY, J. *(separate opinion).* I concur with the reasoning and legal standard enunciated in Justice BOYLE's opinion and with its application to the facts in all but one of the cases. For the reasons given in Justice CAVANAGH's opinion, I agree that the judgment of the Court of Appeals in *People v Bradley* must be reversed and the case remanded for a new trial.

CAVANAGH, J. *(separate opinion,* and not participating in *Conte).* I agree that circumstances and factors in addition to the promise of leniency

should be considered in evaluating the voluntariness of statements alleged to have been induced by promises of leniency. I therefore concur in the conclusion of Section I of Justice BOYLE's opinion. I write separately, however, because I do not fully agree with several statements contained in Section II.

Justice BOYLE concludes that where a defendant obtains no "direct benefit" as to any cases in which he is involved, but agrees to give a statement in exchange for some "collateral benefit" to a third party, it is less likely that his statement was induced by fear or hope. I disagree. An accused may often be more concerned with the welfare of his family, paramour, or friends than with his own welfare. I would hold that the nature of the relationship between the accused and the third party, the extent of the "collateral benefit" involved, and the presence or absence of any express or implied threats against the third party are additional circumstances to be considered in determining voluntariness. For the reasons stated in Chief Justice WILLIAMS' opinion, I would also hold that the fact that defendant initiated the bargaining process is not particularly probative of voluntariness.

In *Norman,* Justice BOYLE concludes that prior to the effective date of MRE 410, statements made in connection with plea negotiations were admissible. Prior case law clearly held that evidence of the plea itself was inadmissible once the plea was withdrawn. However, the admissibility of statements made in connection with pleas or offers to plead was unclear. See *People v Jones,* 416 Mich 354, 380, fn 8; 331 NW2d 406 (1982) (opinion of RYAN, J.), *cert den* 460 US 1084 (1983); MRE 410, Committee Note.

The purpose of MRE 410 is "to promote the disposition of criminal cases by compromise and to

permit the unrestrained candor which produces effective plea discussions." *Jones, supra,* p 364 (opinion of KAVANAGH, J.). This purpose was just as valid before the rule was adopted. See *Santobello v New York,* 404 US 257, 260-261; 92 S Ct 495; 30 L Ed 2d 427 (1971). It would be unfair to treat defendants who give statements in connection with an offer or agreement to plead more harshly than defendants who actually plead and later withdraw their pleas. The inability to introduce statements made in a bargaining session does not place the prosecution in a worse position than it would have occupied if the defendant had not engaged in plea bargaining at all. *Jones, supra,* p 366. I therefore would affirm the Court of Appeals decision to suppress the statements obtained from defendant Norman in accordance with the plea agreement.

In *Bradley,* the defendant's confession was obtained in connection with and during the course of what is commonly understood as "plea negotiating." My sister agrees that "the officer was acting to effectuate the bargain being offered by the prosecution." To hold that a dropped or reduced charge was the only result of this bargaining (instead of an actual plea of guilty or no contest), and that MRE 410 would not reach a statement made in connection therewith, would exalt form over substance. That reasoning would require admissibility to turn on the terms of the bargain rather than on the fact that a plea *or charge* bargain is being offered. I find such reasoning overtechnical and counter to the rule's purpose. Because the confession here was erroneously admitted, I would remand for a new trial.

I agree with Justice BOYLE's reasoning and conclusions in *Meaker* and *Cooper*.

CAVANAGH, J., took no part in the decision of *People v Conte*.