*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

QUAY SETH CLARK,

Defendant-Appellant.

UNPUBLISHED
July 21, 2025
9:45 AM

No. 364550
Wayne Circuit Court
LC No. 20-004218-01-FC

Before: MARIANI, P.J., and MURRAY and TREBILCOCK, JJ.

PER CURIAM.

Defendant, Quay Seth Clark,[1] shot and wounded a customer in a restaurant's drive-through lane, and a jury convicted him of assault with intent to cause great bodily harm less than murder and several firearm counts. His counsel raises two issues on appeal: whether the playing of a video of his interrogation—in which he remained silent in response to continued questioning—violated his constitutional right to due process and whether his trial counsel should have moved to suppress certain statements made during his interrogation. Defendant raises a litany of other issues on his own. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

In the early hours of July 22, 2020, defendant drove in a yellow Chevrolet Monte Carlo to the Hollywood Coney Island in Detroit, Michigan, and placed a drive-through order. Driving a red Dodge Charger, Deron Waddy pulled behind defendant to pick up an order he placed ahead of time. After he waited awhile, Waddy drove around defendant's vehicle to the pickup window to get his order. Someone in defendant's vehicle verbally confronted Waddy, and an argument occurred near the take-out window. As Waddy drove off, 11 shots were fired at his vehicle, and

---

[1] In the trial court, the parties acknowledged that the spelling of defendant's last name should have been corrected to "Clarke," as it appeared when this matter was initiated in the district court. Because that change was never made by the trial court, upon remand of the record, the trial court shall correct the record to reflect this alternative spelling of defendant's last name.

Waddy suffered a gunshot wound to the back. Waddy was not able to identify the person who shot him.

Charlene Frazier was working at the restaurant's drive-through window and confirmed the shooting occurred because a driver of a vehicle cut in line. Despite previously telling police she could not identify the shooter because his back was turned toward her and he wore a facemask, she later picked defendant's photograph out of a photographic array and identified him as the shooter.

In a police interview in August 2020, defendant told the police that, during the verbal altercation in the drive-through line, Waddy told defendant that he had a gun, and defendant saw Waddy reaching for something. Defendant eventually admitted to shooting Waddy because he was upset that Waddy had cut in front of him, and defendant also thought that, after Waddy received his food, Waddy was waiting for defendant near the restaurant's exit so that Waddy could shoot defendant.

Defendant was charged with assault with intent to murder, MCL 750.83; assault with intent to cause great bodily harm less than murder (AWIGBH), MCL 750.84; carrying a weapon with unlawful intent, MCL 750.226; felon in possession of a firearm (felon-in-possession), MCL 750.224f; and four counts of carrying a firearm during the commission of a felony, second offense (felony-firearm), MCL 750.227b. He was convicted of AWIGBH, carrying a weapon with unlawful intent, felon-in-possession, and three counts of felony-firearm, but acquitted of assault with intent to murder and one count of felony-firearm. Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to concurrent terms of 25 to 50 years for his AWIGBH conviction and 19 months to 15 years for his convictions of carrying a weapon with unlawful intent and felon-in-possession, to run consecutively with concurrent, five-year sentences for each felony-firearm conviction. He moved for a new trial and an evidentiary hearing on the basis of ineffective assistance of counsel, which the trial court denied. Defendant also moved in this Court to remand this matter for an evidentiary hearing on his claim of ineffective assistance of counsel, which this Court also denied without prejudice. *People v Clark*, unpublished order of the Court of Appeals, entered November 4, 2024 (Docket No. 364550). Defendant appeals as of right.

## II. ISSUES PRESENTED BY COUNSEL

### A. DEFENDANT'S POLICE INTERVIEW

Police interviewed defendant on August 24, 2020, a redacted portion of which was played for the jury. At no point in the interview did defendant invoke his Fifth and Sixth Amendment rights to remain silent as guaranteed by *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966)—he never told police that he no longer wanted to speak with them or that he wanted to consult with counsel. He explained during the interview that he did not know if he should give the police any information because it would hurt his right to a fair trial, and he also feared how much time he faced if convicted. Ultimately, defendant gave incriminating statements to the officers. On appeal, defendant argues that, because the prosecutor did not redact parts of the interview where he was unresponsive to questions, the jury was able to use the long pauses as evidence, contrary to his right to remain silent under the Fifth Amendment of the United States Constitution, US Const, Am V.

A defendant must contemporaneously object and request a curative instruction in order to preserve an issue involving prosecutorial misconduct.[2] *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Defendant did not object in the trial court to preserve this issue, so we review for plain error affecting his substantial rights. *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014); *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). The defendant has the burden of demonstrating that he was prejudiced by the error, i.e., that the outcome was affected. *Carines*, 460 Mich at 763. The reviewing court, in its discretion, should not reverse unless it concludes that the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Id*. This Court will not reverse if the alleged prejudicial effect of the prosecutor's conduct could have been cured by a timely instruction. *Bennett*, 290 Mich App at 476.

The test for prosecutorial misconduct is whether the defendant was denied a fair trial. *People v Bahoda*, 448 Mich 261, 266-267; 531 NW2d 659 (1995).

> A prosecutor has committed misconduct if the prosecutor abandoned his or her responsibility to seek justice and, in doing so, denied the defendant a fair and impartial trial. A prosecutor can deny a defendant his or her right to a fair trial by making improper remarks that "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." We must evaluate instances of prosecutorial misconduct on a case-by-case basis, reviewing the prosecutor's comments in context and in light of the defendant's arguments. [*People v Lane*, 308 Mich App 38, 62-63; 862 NW2d 446 (2014) (citations omitted, alteration in original).]

Conceding the prosecutor never argued for the jury to consider defendant's silence as evidence of his guilt, defendant instead focuses on the showing of the recording without redacting any long pauses by defendant after he was asked questions.

Under the Fifth Amendment, a defendant's post-arrest, post-*Miranda* silence may not be used as direct evidence of the defendant's guilt or to impeach a defendant's exculpatory testimony. *People v Shafier*, 483 Mich 205, 213-214; 768 NW2d 305 (2009). See also *Doyle v Ohio*, 426 US 610, 611; 96 S Ct 2240; 49 L Ed 2d 91 (1976). But a trial court can properly admit a defendant's unresponsiveness to questioning during an interview after he waived his rights under *Miranda*. See *People v McReavy*, 436 Mich 197, 203; 462 NW2d 1 (1990) ("The admission for substantive purposes of evidence of the defendant's demeanor and statements made during custodial interrogation after a valid waiver of his Fifth Amendment privilege against compelled self-incrimination and prior to invoking the right to remain silent is neither error of constitutional dimension nor a violation of the Michigan Rules of Evidence.").

---

[2] This Court has distinguished claims of "prosecutorial misconduct" from those involving "prosecutorial error," depending on the severity of the claimed conduct at issue. See *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015). However, because "prosecutorial misconduct" is a term of art in criminal appeals, this Court has continued to apply it even if the defendant alleges less severe conduct, involving "prosecutorial error," occurred.

*People v Rice (On Remand)*, 235 Mich App 429, 437; 597 NW2d 843 (1999), illustrates this principle. There, this Court explained that the prosecutor was free to rely on the defendant's interview conduct—nodding his head and crying—in the prosecutor's closing argument:

> In the instant case, defendant waived his Fifth Amendment rights at the outset of each interrogation. In the first interview, defendant made some statements, stopped talking, and hung his head down, and then again responded to questioning. In the second interview, after waiving his rights, defendant merely looked down, nodded, and cried. There is no evidence of record that during either interview defendant verbally invoked his Fifth Amendment right to remain silent or stated that he did not care to answer any further questions, except when he requested a halt to the interview, which the officers granted. We conclude that the present circumstances do not present the insoluble ambiguity forbidden by *Doyle*. Therefore, the officers' testimony concerning defendant's nonverbal conduct and silence was not improper commentary on constitutionally protected silence. Accordingly, the prosecutor did not engage in improper conduct by offering this evidence. [*Id*. at 437 (quotation marks and citations omitted).]

Here, defendant was subject to custodial interrogation when police interviewed him on August 24, 2020, but he waived his rights under *Miranda* and the Fifth Amendment and agreed to speak with the police. At no point did he assert his right to remain silent. While he did not respond to some questions or paused for long periods, he never invoked his right to remain silent by telling the police that he wished to end the interview. For this reason, defendant cannot show that the prosecutor improperly used his right to remain silent even though the jury was shown the recording of defendant's interview, which included periods where defendant was unresponsive.

Even if we agreed that defendant's silence was implicitly used against him, any error was "so minimal" and thus did not run afoul the Fifth Amendment. *Shafier*, 483 Mich at 214-215. This is so, for the prosecutor "made no effort to use . . . defendant's silence against him." *People v Dennis*, 464 Mich 567, 581; 628 NW2d 502 (2001).

For these independent reasons, defendant has not shown that plain error occurred when the jury viewed portions of his police interview where he declined to answer questions.

### B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues defense counsel's failure to move to suppress statements he made during his interview constituted ineffective assistance of counsel. Because defendant raised the argument in this issue in his motion for a new trial, he preserved it for appellate review. *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020).

Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). This Court reviews any factual findings for clear error and reviews de novo questions of constitutional

law.  *Id*.  However, because an evidentiary hearing was not conducted on this issue,[3] our review is limited to whether error is apparent on the existing record.  *Abcumby-Blair*, 335 Mich App at 227; *People v Spaulding*, 332 Mich App 638, 656; 957 NW2d 843 (2020).

To demonstrate ineffective assistance of counsel, defendant must first establish that counsel's performance was deficient, which involves "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  *People v Leffew*, 508 Mich 625, 637; 975 NW2d 896 (2022), quoting *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984).  Defendant must also demonstrate that he was prejudiced by counsel's error.  *Leffew*, 508 Mich at 637.  To establish prejudice, defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*., quoting *Strickland*, 466 US at 694.  "Reasonable probability means 'a probability sufficient to undermine confidence in the outcome.' "  *Leffew*, 508 Mich at 637, quoting *Strickland*, 466 US at 694.

Because we presume effective assistance of counsel, *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018), the defendant bears a heavy burden to prove otherwise, including overcoming a strong presumption that counsel's performance constituted sound trial strategy, *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).  This Court is reluctant to substitute its judgment for that of trial counsel with respect to matters of trial strategy.  *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002).  Counsel will only be found ineffective on the basis of strategic decisions if the strategy employed was not sound or reasonable.  *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007).  Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy.  *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008).

The United States and Michigan Constitutions guarantee the right against self-incrimination.  US Const, Am V; Const 1963, art 1, § 17.  In general, statements made by an accused while subject to custodial interrogation are not admissible unless, prior to questioning, the accused is warned that (1) he has a right to remain silent, (2) his statements could be used against him, and (3) he has the right to counsel.  The accused must have voluntarily, knowingly, and intelligently waived these rights.  *Miranda*, 384 US at 444-445; *People v Daoud*, 462 Mich 621, 633; 614 NW2d 152 (2000); *People v Harris*, 261 Mich App 44, 55; 680 NW2d 17 (2004).

Whether the defendant's statement was voluntary is determined by examining the conduct of the police.  *People v Tierney*, 266 Mich App 687, 707; 703 NW2d 204 (2005).  "[T]he voluntariness prong cannot be resolved in defendant's favor absent evidence of police coercion or misconduct."  *People v Howard*, 226 Mich App 528, 543; 575 NW2d 16 (1997).  This Court has previously summarized the factors that may apply to a determination of the voluntariness of a defendant's statement as follows:

---

[3] The trial court declined to conduct an evidentiary hearing on defendant's claim of ineffective assistance of counsel.  Defendant has not requested that this Court remand this matter to allow him to develop the record on this specific issue at an evidentiary hearing.

Whether a statement was voluntary is determined by examining the conduct of the police. Factors to consider include:

> [T]he age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse.

> The absence or presence of any one of these factors is not necessarily conclusive on the issue of voluntariness. The ultimate test of admissibility is whether the totality of the circumstances surrounding the making of the confession indicates that it was freely and voluntarily made. [*People v Shipley*, 256 Mich App 367, 373-374; 662 NW2d 856 (2003) (quotation marks and citations omitted; alteration in original).]

Applying these factors, we note that the length of defendant's interview was not excessive. On appeal, defendant claims that the methods used by one of the officers who participated in his interview—Lieutenant Matthew Bray—were aggressive and persistent, as evidenced by the fact that defendant acted timid and even cowered at one point. Defendant contends that this shows his statements were forced and that defense counsel should have moved to suppress those statements. More specifically, toward the end of the interview, Lieutenant Bray expressed frustration with defendant for not giving him answers to his questions and told defendant that he was losing patience with him. Both Lieutenant Bray and defendant stood up, and Lieutenant Bray moved toward defendant, causing him to flinch. Lieutenant Bray told defendant that he was not going to hit him. That interaction was unusual and, although nothing Lieutenant Bray did indicates that he was about to strike defendant or use physical force, defendant appeared to believe he could be struck. While Lieutenant Bray may have been aggressive in his tactics, we cannot say that his conduct rose to the level of coercion or misconduct. *Howard*, 226 Mich App at 543.

Similarly, in his motion for a new trial, defendant asserted—without an offer of proof or an affidavit—that he was deprived of sleep and food and was under the influence of narcotics. But the recorded interview reveals the contrary. Defendant asked for water and the officers obliged, and the officers discussed ordering food (which defendant did not request). He also specifically denied that he was under the influence of drugs or alcohol at the start of the interview. While defendant has since produced his own affidavit, the recording demonstrates defendant understood what was going on and was capable of answering questions when he wanted to do so. He has not shown that he was intoxicated and unable to voluntarily agree to speak with the police, even if he

might have still been under the influence of alcohol or drugs. See *People v Leighty*, 161 Mich App 565, 571; 411 NW2d 778 (1987).

We further note nothing about defendant's background would indicate he gave the statements involuntarily. Defendant had been the subject of criminal proceedings in the past (he had been tried by a jury before and served time in prison), and he knew how the criminal justice system worked despite dropping out of high school in the tenth grade. And during the interview, defendant asked Lieutenant Bray questions that indicated he understood the proceedings and the potential consequences of his arrest.

Finally, we note defendant gave limited information during the interview and chose not to admit that he was the one inside the yellow car (even after he admitted to shooting Waddy) or state how many times he fired at Waddy because he thought it might jeopardize his right to a fair trial if he said too much. This further indicates that his will was not overborne by aggressive interviewing tactics used by Lieutenant Bray.

For these reasons and considering the totality of the circumstances, the trial court did not abuse its discretion by denying defendant's motion for a new trial on this issue. And even if defense counsel had raised an objection when the statement was admitted at trial, the outcome would have been the same, and the statement would have been admitted. Counsel is not ineffective for failing to raise a futile objection. *People v Isrow*, 339 Mich App 522, 532; 984 NW2d 528 (2021). The record therefore does not show that counsel's failure to raise this issue before the trial court affected the outcome of this trial. *Leffew*, 508 Mich at 637.

III. DEFENDANT'S STANDARD 4 ISSUES

A. INEFFECTIVE ASSISTANCE OF COUNSEL

In his Standard 4 brief, defendant sets forth additional claims of ineffective assistance of counsel, most of which were not raised before the trial court. To the extent defendant raised these arguments in his motion for a new trial, filed in the trial court, or in his motion to remand for an evidentiary hearing under *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973), filed in this Court, such arguments are preserved. *Abcumby-Blair*, 335 Mich App at 227. Because the trial court did not hold a *Ginther* hearing, and this Court denied defendant's motion to remand for one, our review of the applicable arguments is limited to errors apparent on the record. *Id.* For those arguments defendant failed to preserve, we may still review them for mistakes apparent on the existing record. *People v Jackson*, 292 Mich App 583, 600; 808 NW2d 541 (2011). Defendant's claims of ineffective assistance of counsel are meritless in each instance.

1. DEFENDANT'S STATEMENTS

Defendant challenges the admission of statements he made during his interrogation, expanding on the previously discussed arguments made by his appellate counsel. More specifically, defendant claims he informed his attorney that, at the time of his interview, he was under the influence of alcohol and Ecstasy, had not slept for 48 hours, was denied food and water, and felt compelled to talk to the police because of what they told him would happen at trial—for instance, that he could plead self-defense if he provided the police with details about the shooting but would look like a fool to the jury if he went to trial and did not provide details about the

-7-

shooting. Defendant further asserts that the officers threatened him with a murder charge if he failed to make a statement and he asked for counsel. He also claims that he asked defense counsel to challenge the voluntariness of his statements, but was told that they would still be admissible because defendant was "*Mirandarized*." As set forth, defendant has not overcome defense counsel's assessment of the merits of the underlying motion to suppress his statements.

First, as discussed earlier, defendant has not shown that purported alcohol and drug use affected his ability to voluntarily waive his constitutional rights, nor do we discern any facts supporting his sleep-deprivation allegation. Moreover, officers offered him water, and defendant did not complain of being hungry during the two-hour interview. The questioning by the police was also not so coercive that the trial court would have found that defendant's admissions were involuntary. While Lieutenant Bray told defendant that he might look like a fool if he denied it was him in the yellow car involved in this shooting, as previously discussed, the tactics used by the police were not so coercive as to cause defendant to make involuntary admissions. In fact, defendant refused to provide responses to these questions because he knew it might have harmed his chances if his case went to trial.

Defendant's claim that Lieutenant Bray told him that he was facing a charge of attempted murder if he failed to make a statement fares no better. It is apparent from the video recording of defendant's interview that Lieutenant Bray told defendant that he could not give defendant any legal advice about possible charges because that was for the prosecutor to decide. There is nothing on the recording that proves that defendant was threatened with an attempted murder charge if he failed to make a statement. Defendant has not offered factual support for this argument. *Carbin*, 463 Mich at 600. However, defendant stated that he understood that he was under arrest for assault with intent to murder. At most, Lieutenant Bray told defendant that defendant could not prove any justification for this shooting if he did not give his side of the incident. Lieutenant Bray repeatedly urged defendant to give a statement on how many times he shot at Waddy so that defendant could make his version of the incident known. These were not such coercive statements to render any responses by defendant as involuntary. See *Tierney*, 266 Mich App at 707; *Shipley*, 256 Mich App at 373-374; *Howard*, 226 Mich App at 543.

So too for defendant's claim that Lieutenant Bray inappropriately promised leniency. Lieutenant Bray plainly told defendant that it was the role of the police to bring the case to the prosecutor, who would choose the charges to pursue. Significantly, Lieutenant Bray told defendant that he could not make any promises to defendant, and nothing he said gave defendant any assurances of leniency. While confessions induced by promises of leniency are involuntary and inadmissible, the record does not show that defendant was given any promises of leniency. See *People v Conte*, 421 Mich 704, 743; 365 NW2d 648 (1984).

To the extent defendant claims the police lied to him about Waddy identifying him as Waddy's shooter, that does not appear to be accurate. When Lieutenant Bray showed defendant a copy of the photographic array and discussed defendant being picked out of that array as the shooter, Lieutenant Bray told defendant that a female witness identified defendant. Lieutenant Bray did not name the witness who made that identification. However, even if Lieutenant Bray may have misstated which witness identified defendant, this would not support suppressing defendant's statement as involuntary. See *People v Givans*, 227 Mich App 113, 122-123; 575 NW2d 84 (1997); *People v Hicks*, 185 Mich App 107, 113; 460 NW2d 569 (1990).

Defendant also refers to a second interview on August 25, 2020, but the only recording made of defendant's statements that was admitted at his trial as evidence was the interview conducted on August 24, 2020. Even if defendant had a second interview, nothing from that interview was offered at his trial. Accordingly, if defendant asserted his right to counsel or expressed confusion over his constitutional rights at the second interview, as he claims, nothing from that interview was used against him at trial, and he therefore cannot show that there was any reason for his attorney to object to that interview.

Finally, defendant asserts that he invoked his Sixth Amendment right to counsel under *Miranda* and yet his interview persisted. However, that argument clearly lacks factual support in the record for the recording of his interview demonstrates he did not do so.

The totality of the circumstances of defendant's interview does not establish that the police engaged in misconduct to the point that defendant made involuntary statements. Indeed, defendant refused to provide many details about this case when he raised doubts about whether it would help him at trial. As a result, defendant has not shown that defense counsel was ineffective for not moving to suppress his statement.

For these reasons, defendant cannot demonstrate a reasonable probability that the outcome of his trial was affected by defense counsel's failure to move to suppress the results of defendant's interview. *Leffew*, 508 Mich at 637.

## 2. DEFENSE COUNSEL'S FAILURE TO INVESTIGATE

Defendant argues that defense counsel was ineffective for not fully investigating Frazier and Waddy when preparing for their trial testimony. He claims that he raised this argument at the time of the hearing on his motion for a new trial on May 22, 2024, but no transcript for that date is available to review. However, even considering the merits of defendant's argument, he has not met his burden of proving ineffective assistance of counsel on the existing record.

First, defendant does not offer any support or evidence on how defense counsel failed to properly investigate Waddy. Defendant admits that defense counsel knew Waddy did not identify defendant when shown the photographic array or at any other point, including the preliminary examination. Defendant speculatively claims that this information should have caused defense counsel to make further inquiries with regard to Waddy's testimony or ability to identify defendant. However, if Waddy never specifically identified defendant, it is unclear what more defense counsel could have uncovered that would have helped defendant. Defendant has not shown that defense counsel's examination of Waddy would have been different when defendant does not offer any new information that defense counsel could have used during his cross-examination of Waddy. "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *Carbin*, 463 Mich at 600. Here, defendant has not provided factual support for his argument.

Second, defendant has not shown a reasonable probability that additional investigation by defense counsel would have affected the outcome of these proceedings with regard to Frazier's testimony. The facts were fully developed at trial regarding whether she saw a black and white

-9-

copy of the photographic array, in which the background of defendant's photograph was lighter than the other photographs. The record was also developed on Frazier's statement to the police that she initially said she could not identify the shooter because he had on a mask and his face was turned away from Frazier. Moreover, Frazier's testimony about being threatened by the prosecutor with jail time if she did not appear at an evidentiary hearing when she was reluctant to cooperate was brought up by defendant's attorney at the evidentiary hearing. Defendant has not shown that any new information would have been discovered if defense counsel had conducted additional investigation.

Defendant cites to a portion of the record where he claims that the police showed Frazier a single photograph on a cellular telephone, along with the photographic array, and suggests that her identification was erroneous because the police only showed her one photograph. We have not found any testimony to support that assertion. Defendant therefore has not met his burden of proving this claim by offering factual support for his argument. *Id*.

He also asserts that defense counsel should have discovered information related to how he became a suspect in this matter, which he believes emanated from the City of Detroit's Project Green Light surveillance program. However, defendant has not supported this claim with a proper offer of proof and instead relies on speculation only to claim that defense counsel was unprepared. *Id*. Moreover, defense counsel objected during trial after there was a brief reference to surveillance technology that might have been used to initially identify defendant because no such information was provided during discovery, and facial recognition technology has not been proven reliable. The trial court ruled that there was no violation of *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), for the failure to turn over that information in discovery and instructed the jury to disregard any reference to facial recognition technology. In sum, no evidence was admitted related to this issue, and he has thus has not shown that defense counsel should have investigated further.

## 3. INTERLOCUTORY APPEALS

Next, defendant argues that defense counsel was ineffective for refusing to pursue interlocutory appeals.

The record shows that defense counsel did not pursue any interlocutory appeals as defendant requested because the issues were otherwise preserved for appellate review in an appeal as of right if defendant was convicted. Defendant has not shown that his right to appeal any rulings of the trial court was affected for this reason.

On the merits, the only ruling he argues should have been appealed earlier involves the trial court's decision to allow in Frazier's identification of defendant at trial. He contends that the trial court applied the wrong standard when reviewing the evidence offered at the *Wade*[4] hearing, seeking to exclude Frazier's identification of defendant because of an impermissibly suggestive pretrial identification procedure.

---

[4] *United States v Wade*, 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967).

A pretrial identification procedure can violate a defendant's right to due process if it was so impermissibly suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification. *People v Kurylczyk*, 443 Mich 289, 302; 505 NW2d 528 (1993), overruled in part on other grounds by *People v Hickman*, 470 Mich 602 (2004). The burden is on the defendant to prove the identification procedure was impermissibly suggestive. *Id*. Once a court determines that an invalid identification procedure was used, the second step requires determining if the witness had an independent basis to identify the defendant in court. *People v Gray*, 457 Mich 107, 114-115; 577 NW2d 92 (1998). Where there is a claim that an in-court identification was tainted, the trial court conducts a *Wade* hearing to determine if an independent basis exists for the witness's identification. See *People v Kachar*, 400 Mich 78, 91-96; 252 NW2d 807 (1977).

The evidence showed that Frazier saw the photographic array, which, per department procedure, contained color photographs. For this reason, the trial court concluded defendant did not satisfy his burden of proving the police showed a black and white copy of the array or that their procedure resulted in a substantial likelihood of misidentification of defendant by Frazier. Because the trial court found the identification procedure proper, it did not need to reach the contingent question concerning whether there was an independent basis for the witness's identification that would support allowing the witness to identify defendant at trial. It is only this part of the analysis that requires a showing by clear and convincing evidence that the witness identified the defendant on some other basis than the tainted identification. *Id.* at 91. Defendant's claim that the trial court should have applied the "clear and convincing evidence" standard when ruling on his motion to suppress Frazier's identification is therefore without merit. He thus cannot show that he was prejudiced because his attorney did not file an interlocutory appeal. *Leffew*, 508 Mich at 637.

## 4. FAILURE TO OBJECT TO DETECTIVE WALKER'S TESTIMONY

Defendant next contends that defense counsel was ineffective for failing to object to Detective Carmelia Walker's allegedly perjurious testimony at trial that she never previously saw Defense Exhibit A, a photocopy of the black and white photographic array where the background for defendant's photograph appeared lighter than the other photograph backgrounds. Central to defendant's argument is his claim that People's Exhibit 13 (from the preliminary examination) is the same exhibit that was admitted at trial as Defense Exhibit A. Both apparently are black and white copies made of the original photographic array, which contained color photographs. However, there was a question raised over whether People's Exhibit 13 and Defense Exhibit A were duplicate copies made of the original array, considering the background for defendant's photograph only appeared lighter than the other photograph backgrounds on Defense Exhibit A. It therefore is possible that, even if both exhibits were black and white copies of the array, the print quality of these two exhibits was not the same.

Detective Walker testified that she showed Frazier a color version of the photographic array, and the police department only used color copies to make identifications. Detective Walker could not identify defendant's black and white version of the photographic array. Detective Walker testified that she had never seen the defense's exhibit and that it was not part of the file in this case.

Defendant argues that Detective Walker committed perjury because the same exhibit was produced during the preliminary examination. However, because the defense's black and white copy of the array may have appeared different than the other versions Detective Walker saw, there is no basis for defendant to argue that she committed perjury just because another black and white copy of the photographic array was offered at the preliminary examination. He thus cannot establish that defense counsel's failure to object to the relevant portion of Detective Walker's testimony constituted deficient performance. *Id.*

### 5. CLOSING ARGUMENT ABOUT DETECTIVE WALKER'S TESTIMONY

Defendant argues that his trial counsel was ineffective for failing to object to the prosecutor's closing argument, which he contends mischaracterized Detective Walker's testimony about the defense creating its own exhibit regarding the photographic array shown to Frazier. Defendant does not cite to where in the record this part of the argument appears, and we could not find any reference to Detective Walker's testimony in the prosecutor's closing argument or on rebuttal.

The trial court record thus does not support defendant's claim that the prosecutor engaged in misconduct by misleading the jury during closing arguments with regard to Detective Walker's testimony, and defendant therefore has not established the factual predicate for his claim that his counsel was ineffective for not objecting to the prosecutor's closing argument in order to prove ineffective assistance of counsel. *Carbin*, 463 Mich at 600.

### 6. CLOSING ARGUMENT ABOUT WADDY'S IDENTIFICATION TESTIMONY

Defendant challenges the following portion of the prosecutor's rebuttal argument:

Defense counsel—and there is a reason why the judge is gonna tell you that the questions that the—that the attorneys ask, they aren't evidence. And [defense counsel] asked a very, you know, tricky good question is this the person—to Mr. Waddy—is that the person who shot you? He said this is not the person.

But, again, as I stated earlier he doesn't know who shot him or at least he said that he didn't know who shot him. But what did he say? The person with the white T-shirt is the one who shot me. And we don't even need him to say that. You see the videos. He didn't say the person in the black T-shirt. He didn't say some random person who was walking around with a white T-shirt. That argument falls flat that it was another person in that vehicle who fired the shot. We have the video, ladies and gentlemen.

Defendant appears to argue that the prosecutor wrongly told the jury that Waddy did not say defendant did not shoot him. However, Waddy could not see the shooter's face and, therefore, he could not make any identification. Defendant suggests that the prosecutor misled the jury regarding Waddy's actual testimony that defendant was not the shooter, and thus defense counsel's failure to challenge the statement constituted deficient performance.

While a prosecutor may not make a statement of fact to the jury that is unsupported by evidence, he or she is free to argue the evidence and any reasonable inferences that may arise from

the evidence. *People v Ackerman*, 257 Mich App 434, 450; 669 NW2d 818 (2003). However, prosecutors must refrain from making prejudicial remarks. *Bahoda*, 448 Mich at 283. Here, Waddy gave inconsistent testimony concerning identifying the shooter. On one hand, he testified that defendant was not the shooter, but he also stated he could not identify the shooter because he did not see the shooter's face. For this reason, the record supported the prosecutor's making the argument that the jury should reject Waddy's testimony that defendant was not the shooter.

Defendant next appears to argue that, because Waddy could not identify him as the shooter, Waddy's testimony could not be relied on to prove the shooter's identity by his clothing. He thus claims that the prosecutor could not use Waddy's testimony to prove defendant was the shooter. But Waddy clarified that he never saw the shooter's face, so he could not say whether defendant shot him, and he offered other testimony that could be used to prove defendant was the shooter. Waddy's testimony thus did not exonerate defendant. Moreover, the prosecutor's argument about the clothing description Waddy provided was consistent with other evidence that supported the jury finding defendant shot Waddy. Defendant has not shown that the prosecutor mischaracterized Waddy's testimony. Even if defense counsel might have raised an objection to this argument, it is apparent that there is no reasonable probability the outcome of the trial was affected by defense counsel's failure to do so. *Leffew*, 508 Mich at 637.

### 7. *FRANKS* HEARING/PROBABLE CAUSE DETERMINATION

Defendant also argues that defense counsel failed to properly challenge the affidavits offered in support of the search warrants obtained for defendant's home and telephone under *Franks v Delaware*, 438 US 154; 98 S Ct 2674; 57 L Ed 2d 667 (1978), asserting the affidavits contained false statements supporting a probable cause determination. In order to prevail on a motion to suppress the evidence obtained pursuant to a search warrant procured with allegedly false information under *Franks*, the defendant must show by a preponderance of the evidence that the affiant had knowingly and intentionally, or with reckless disregard for the truth, inserted false material into the affidavit and that the false material was necessary to a finding of probable cause. See *People v Williams*, 134 Mich App 639, 643; 351 NW2d 878 (1984).

At a pretrial hearing in March 2022, defense counsel noted that defendant told him that defendant believed there was a *Franks* violation, but defense counsel did not see that as an issue at that time. Nonetheless, defense counsel later filed a motion to quash the search warrant because he believed there was a meritorious issue involving whether probable cause was established on the basis of a material omission. The trial court denied that motion and noted that nothing was physically seized and the police did not "dump" the contents of defendant's telephone.

While defendant argues that there were grounds to challenge the affidavit offered in support of the search warrants, no evidence obtained in those searches was used against defendant at his trial and, therefore, he cannot prove that he was prejudiced by defense counsel's failure to properly argue the motion to suppress on the basis of *Franks*. That is, even if defense counsel had been successful in pursuing the issue related to the search of both defendant's home and telephone, it would not have resulted in the suppression of any evidence.

-13-

Finally, defendant seems to claim that his arrest was the product of the searches of his home and telephone, but he has not shown that his arrest in this case had anything to do with the search warrants for his home and telephone.

Considering the foregoing, defendant has failed to demonstrate a reasonable probability that defense counsel's performance with regard to this issue affected the outcome of this trial. *Leffew*, 508 Mich at 637.

### 8. COUNSEL'S FAILURE TO PRESENT EVIDENCE

Next, defendant argues that defense counsel was ineffective for not calling an expert witness to support defendant's theory that his statement was involuntary because he was coerced by the police. In his affidavit, defendant states that he asked his attorney to request funding for an expert witness to testify about police interrogation tactics to support his defense. According to defendant, his attorney told him that field would not be of use to the defense, so the trial court would not grant the motion. Defendant states in his brief that he asked his attorney to call Dr. Richard Ofshe, who has testified as an expert witness on police interrogation techniques. However, there is no mention of Dr. Ofshe in defendant's affidavit. Regardless, defendant cannot prove that his counsel was ineffective for not offering expert witness testimony.

At trial, defense counsel cross-examined Lieutenant Bray concerning false confessions. Defense counsel tried to ask him about literature supporting the view that when individuals are advised of their rights, they may confess to a crime that they actually did not commit. The trial court sustained the prosecutor's lack-of-foundation objection, and defense counsel was not able to ask a proper follow-up question. On redirect, Lieutenant Bray explained that he guards against false confessions by having the interviewee provide some information that only the responsible person could know once a confession is made. According to Lieutenant Bray, he did so in defendant's interrogation, and defendant provided details related to the location of the incident and the conversation that took place between him and Waddy before the shooting—information that was not publicly known. Given this, and the lack of media coverage of the shooting, Lieutenant Bray believed that defendant provided accurate and truthful information during the interview.

In lieu of calling an expert, defense counsel opted to cross-examine Lieutenant Bray about his tactics. Although defense counsel failed to question the witness to establish support for defendant's claimed involuntary confession, there is no indication that an expert witness would have changed the outcome of this trial. Accordingly, even if defendant could have located an expert witness willing to testify about police interviewing tactics, defendant has not made an offer of proof showing a reasonable probability that such testimony would have made a difference in the trial's outcome by causing the jury to agree that defendant was coerced into admitting his involvement in this offense. *Id*.

## 9.  CUMULATIVE ERROR

While defendant argues that he is entitled to a new trial because of the cumulative effect of the errors made by defense counsel, defendant has not shown that his counsel made any errors. *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007).  To the extent he seeks an evidentiary hearing on his claims of ineffective assistance of counsel, he has not shown merit in any of the underlying issues, and we thus decline to remand this matter for an evidentiary hearing. See *People v McMillan*, 213 Mich App 134, 141-142; 539 NW2d 553 (1995); *People v Simmons*, 140 Mich App 681, 685; 364 NW2d 783 (1985).  Nor has he set forth any additional facts to show the need for an evidentiary hearing after this Court previously denied his motion to remand.  *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007).

## B.  PROBABLE CAUSE CONFERENCE

Defendant next focuses on his entitlement to a probable cause conference under MCL 766.4, MCR 6.104(E)(4), or MCR 6.108(A).  Defendant admits this issue is unpreserved, and we cannot find that any plain error occurred.  *Carines*, 460 Mich at 763.

MCR 6.104(E)(4) provides that, at an arraignment on a warrant, a court must set a date for a probable cause conference for not less than seven days, or more than 14 days, after the date of the arraignment.  The preliminary examination must also be set for a date not less than five days, or more than seven days, after the date of the probable cause conference.  It also provides for a conference in between the time of the arraignment and the preliminary examination to discuss any relevant matters.

According to defendant, the 36th District Court never conducted a probable cause conference.  That is not what the record reflects.  According to the register of actions, a "Pre Exam Hearing" was held on September 4, 2020, and the case was referred to "Pre-Trial Services For a Bond Review" before a 36th District Court judge.  This occurred only eight days after his August 27, 2020 arraignment and was thus timely under MCR 6.104(E)(4).  The transcript of that hearing is titled "Probable Cause Conference."  Defendant appeared via Zoom, and defense counsel advised the court that he was missing a substantial amount of discovery and requested an in-person preliminary examination.  Defense counsel also asked for a bond hearing, which was granted.  The district court adjourned the probable cause conference for a week.  So, on September 11, 2020, the district court held a bond hearing, at which defendant was present again via Zoom.  The court reduced the amount of the cash or surety bond from $500,000 to $250,000.  Bond, of course, is one of the issues that a district court may review at a probable cause conference.  See MCL 766.4(1)(b); MCR 6.108(C) and (D).

Defendant thus had the opportunity to raise any relevant issues with the district court before his preliminary examination and subsequent bind over to the trial court.  Because the record does not support defendant's claim, he has not met his burden of proving the factual support for this argument.  *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000).  In sum, he has not shown he did not receive a timely probable case conference after he was arraigned on the warrant, and he cannot show that plain error occurred that affected his substantial rights.  *Carines*, 460 Mich at 763.

## IV.  CONCLUSION

For these reasons, we affirm the trial court's judgment.

/s/ Philip P. Mariani
/s/ Christopher M. Murray
/s/ Christopher M. Trebilcock